Jean DAVIS, Appellant,

v.

CITY OF ST. LOUIS, Respondent.

No. 42298.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 3, 1981.

Fahrenkrog & Foehner, Charles E. Foehner, III, St. Louis, for appellant.

John J. FitzGibbon, Associate City Counselor, St. Louis, for respondent.

PUDLOWSKI, Presiding Judge.

This is an appeal from the granting of defendant's motion notwithstanding the verdict following a $5,000 jury award of damages to plaintiff. The cause of action arose out of an accident between a municipal street sweeper operated by a city employee and plaintiff's automobile. The accident occurred on September 26, 1977, in the City of St. Louis. The trial court granted defendant's motion based upon the city's tort immunity.

The facts are not in dispute. On September 26, the plaintiff's automobile and a city street sweeper collided.[1] There was sufficient evidence from which a jury could have found that the driver of the sweeper was negligent. Further, it was established that at the time of the accident the sweeper's brushes were raised and it was not actively engaged in cleaning the streets. However, the driver was within the district to which he had been assigned and was returning the vehicle to the city garage at the end of his shift.

In plaintiff's two points on appeal it is charged that the trial court erred in holding the city immune under the guise of the doctrine of sovereign immunity.

Before we address the plaintiff's contentions the defendant city argues that regardless of the propriety of the trial court's application of the doctrine of sovereign immunity, the lower court's judgment should be sustained because plaintiff did

---

1. The operator of the street sweeper was originally a party defendant but was dismissed prior to trial and did not testify for either side.

not plead, in her first amended petition, that the city was acting in a proprietary capacity. It is fundamental to the doctrine of sovereign immunity that while municipalities are not liable for injuries which occur in the negligent performance of a governmental function they are liable for injuries which occur in the negligent performance of a proprietary function. *Hiltner v. Kansas City*, 293 S.W.2d 422 (Mo. 1956); *Dallas v. City of St. Louis, Mo.*, 338 S.W.2d 39, 41 (Mo.1970). It is also basic that to survive a motion to dismiss for failure to state a claim the proprietary capacity of the city must be alleged in the petition. *Burke v. City of St. Louis*, 349 S.W.2d 930, 933 (Mo.1961); 63 C.J.S. Mun. Corp. § 934d(3), p. 400. However, a review of the transcript reveals that the first time defendant raised plaintiff's failure to plead proprietary function was in its motion after verdict. That was too late. A petition will be found sufficient after verdict if after allowing all reasonable inferences and matters necessarily implied, there are sufficient facts "to advise the defendant, with reasonable certainty, as to the cause of action it is called upon to meet and bar another action for the same subject-matter." *Barber v. Albright Kansas City, Inc.*, 472 S.W.2d 42, 44 (Mo.App.1971). Further, a petition which "only imperfectly pleads a claim but which is amendable to a proper statement of that claim without changing the cause of action will be held good after verdict." *Barber v. Albright Kansas City, Inc.*, 472 S.W.2d at 44; *State ex rel. Gardner v. Webber*, 177 Mo.App. 60, 164 S.W. 184 (1914). The petition in the instant cause set forth facts sufficient to apprise defendant City of St. Louis of the cause it was required to defend. The petition was also amendable to state a proper claim without changing the cause of action sued upon. Having delayed its attack on the petition until after the verdict was rendered, defendant cannot avail itself of the rule it invokes. *Gardner v. Webber*, 177 Mo.App. 60, 164 S.W. at 186.

The gist of both of plaintiff's points on appeal is that at the time of the accident, the street sweeper was engaged in fulfilling a proprietary duty. Plaintiff contends for that reason the trial court erred in applying the doctrine of sovereign immunity. We agree.

The history of sovereign immunity in this state has been one of "... chipping and whittling away at the doctrine ... as applied to municipalities. Through use of the 'governmental-proprietary dichotomy,' liability or non-liability of a municipality for its torts has come to depend upon the character of the act performed, not the nature of the tort." *Jones v. State Highway Comm.*, 557 S.W.2d 225, 229 (Mo.banc 1977).

■ This distinction between governmental and proprietary duties has been oft stated: A governmental duty is one which is performed for the common good of all. A duty will be deemed proprietary if it is performed for the special benefit or profit of the municipality as a corporate entity. *Krueger v. Board of Education*, 310 Mo. 329, 274 S.W. 811, 814 (1925). Also, it is clear that a municipality cannot escape responsibility for the careful performance of a duty which is substantially one of a proprietary nature even though the duty may in some general way also relate to a function of the government or although it may inure incidentally to the advantage of the public. *Dallas v. City of St. Louis*, 338 S.W.2d 39, 44 (Mo.1960); 57 Am.Jur.2d Mun. Tort Liability § 31, pp. 43–44.

This simple yet nebulous distinction has resulted in a "maze of inconsistency" in suits against cities, producing "uneven and unequal results which defy understanding." *Jones v. State Highway Comm.*, 557 S.W.2d at 229. See 56 Am.Jur.2d Mun. Tort Liability § 30, p. 42.

Prior to *Myers v. City of Palmyra*, 355 S.W.2d 17 (Mo.1962) the rule of law held that municipalities were immune from tort liability for injuries arising from the negligent performance of street cleaning. *Hayes v. City of Kansas City*, 362 Mo. 368, 241 S.W.2d 888 (Mo.1951); *Lober v. City of Kansas City*, 74 S.W.2d 815 (Mo.1934); *Cassidy v. City of St. Joseph*, 247 Mo. 197, 152 S.W. 306 (Mo.1912). That rule was based

upon the cities' police power and the protection of its citizens' health and welfare. However, the Supreme Court modified the doctrine in *Myers*, and we adhere to its sound reasoning. *Myers* held the doctrine of sovereign immunity does not apply to a municipality's performance of removing snow from its streets "when not done primarily for purposes of sanitation and the health of the community." *Myers v. City of Palmyra*, 355 S.W.2d at 20. The municipality argued that snow removal was a governmental function because it was performed "for the protection and preservation of health, to enable the sick to get to the drug store, doctor or hospital and to enable the inhabitants to obtain food and fuel necessary to preserve their health and to enable the police, fire and sanitary departments of the city to continue in operation." *Myers v. City of Palmyra*, 355 S.W.2d at 19. The Missouri Supreme Court rejected this argument holding that a city in constructing, repairing and maintaining its streets must act with due care, not only to keep the streets free from dangerous conditions but also while performing any act to repair or maintain them open for public travel. The court went on to indicate that under the well established law of Missouri a municipality is liable for its torts resulting from activities done in carrying out these duties regardless of the classification, proprietary or governmental. *Myers v. City of Palmyra*, 355 S.W.2d at 18–19.

We believe it is time to recognize that street sweeping is primarily an act conducted by municipalities to maintain our thoroughfares open for the unrestricted flow of traffic. As the court in *Myers* found the purpose of snow removal was primarily to maintain unobstructed traffic, we too hold that the primary purpose of street cleaning is to maintain an unhampered flow of traffic on streets free of rubbish and automobiles disabled by such refuse. In addition, good sense dictates that in this age of bumper to bumper traffic the clearing of debris from street surfaces is more naturally related to and connected with maintaining passable thoroughfares than with the promotion of public

health and the prevention of disease. For example, the removal of glass, nails, plastic and metal objects and other materials which can obstruct traffic or damage automobile tires does not promote the public health. The municipalities of yesteryear were charged with maintaining streets littered with large quantities of horse excrement, discarded produce and other organic matter. Obviously, the removal of such substances served to promote the public health by reducing possible sources of disease and illness. However, modern municipalities are not confronted with the noxious problem described above. The organic refuse of old has given way to new forms of litter. Today, street sweeping simply improves the condition of our street surfaces and thereby encourages the safe and orderly flow of traffic. Any benefit bestowed upon the public health as a result of sweeping road surfaces is merely incidental to its primary function of maintaining the streets for public travel. Further, we are convinced that it would be unjust to allow a municipality to escape responsibility for the negligent performance of this substantially proprietary duty simply because public health benefits incidentally from its performance. In this case the veil of governmental immunity should not be raised under the pretext of protecting the public from a "health hazard" or the municipality's invocation of police power.

The above rule is consistent not only with *Myers* and common sense but also with well reasoned opinions from other jurisdictions. See *City of Denver v. Davis*, 37 Colo. 370, 86 P. 1027 (Colo. 1906); *LeMarr v. City of Colorado Springs*, 95 Colo. 244, 35 P.2d 497 (Colo. 1934); *Griffith v. City of Butte*, 72 Mont. 552, 234 P. 829 (Mont.1925); *Missano v. New York*, 160 N.Y. 123, 54 N.E. 744 (1899).

We find plaintiff established at the time of the accident that the defendant was performing a proprietary function and the trial court erred in allowing the defendant to invoke the defense of sovereign immunity.

Reversed and remanded with instructions to reinstate the jury verdict.

WEIER and GUNN, JJ., concur.