**CENTRAL TELECOMMUNICATIONS, INC., Plaintiff,**

v.

**CITY OF JEFFERSON CITY, MISSOURI, and TCI Cablevision, Inc., Defendants.**

**No. 83–4068–CV–C–5.**

United States District Court, W.D. Missouri, C.D.

Feb. 29, 1984.

 

R. Lawrence Ward, G. Stephen Long, Joseph U. DeCuyper, Kansas City, Mo., for plaintiff.

Lyndell H. Porterfield, Thomas M. Newmark, St. Louis, Mo., for City of Jefferson City, Mo.

Harold R. Farrow, Oakland, Cal., Henry Andrae, Duane Schreimann, Jefferson City, Mo., for defendants.

## ORDER

SCOTT O. WRIGHT, District Judge.

### I. *Introduction*

Plaintiff, Central Communications, Inc. (Central), has filed a fourteen-count complaint asserting anti-trust, constitutional and common law claims against the City of Jefferson City and TCI Cablevision, Inc. (TCI). The defendants have filed motions to dismiss which are pending before the Court.

In support of its claims, Central alleges that since 1978 defendant TCI has been the sole operator of a cable television system within the city limits of Jefferson City. TCI has conducted its cable television system pursuant to a "license" or "franchise" granted through city ordinances. In late 1980, the City began studying and thereafter adopted on December 15, 1980, a bid procedure by which the new franchise (to be effective April 1, 1981) could be awarded. The City initiated this process by sending a "Request for Proposals for Cable Television Service" (RFP) to numerous cable television companies, including defendant TCI.

The City's bid process mandated that all bids were to be based entirely upon the RFP specifications and that said bids, once received by the City, were to be evaluated by an independent consulting agency in Dallas, Texas.

The plaintiff alleges that during the time that bids were being considered by the City, TCI illegally contacted and threatened the consultant retained by the City, threatened to cut off cable television service to the City, withheld franchise payments from the City, instituted sham litigation against

the City, met illegally with City officials, and threatened other cable company bidders.

Plaintiff further alleges that on January 25, 1982, the City Council voted on two bills and selected the plaintiff's bid. It is alleged that they further authorized and directed the City Attorney to negotiate with plaintiff in order to prepare the necessary franchise documents, including two ordinances, a regulatory ordinance and a franchise award ordinance.

The plaintiff further alleges that the City Attorney conducted secret negotiations with the defendant TCI while representing to the plaintiff that it would be awarded the franchise.

On April 20, 1982, the Council voted 7–3 in favor of awarding the franchise to plaintiff Central. The plaintiff alleges that Mayor Hartsfield, acting pursuant to an agreement and in concert with TCI, the City Attorney and others, vetoed the Council's franchise award to Central. On the same date and after the Mayor's veto, ordinances were presented to the Council awarding the franchise to the defendant TCI. The Council voted 5–5 on these ordinances and they were passed by the deciding vote of the Mayor.

Plaintiff alleges that Mayor Hartsfield's veto and subsequent votes were in violation of state law prohibiting such action by the Mayor where he has a conflict of interest. The plaintiff further alleges that the Mayor had a conflict of interest because he worked for a telephone company from whom the defendant TCI rented space.

Mayor Hartsfield's veto and subsequent votes were allegedly cast pursuant to an agreement with TCI, City Attorney Utterback and others not yet known by the plaintiff to award the franchise to TCI despite its having not presented a bid which complied with the RFP procedure.

## II. *Motions to Dismiss*

### A. *Anti-trust Claims*

#### 1. *Parker* exemption

The City asserts that it is immune from liability because its actions were authorized by the State of Missouri. Federal anti-trust laws do not prohibit a state from exercising its sovereign powers to impose certain anti-competitive restraints. The Supreme Court first addressed the conflict between federal anti-trust law and state sovereign power in *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). The Court stated:

> We find nothing in the language of the Sherman Act or in its history which suggests that its purpose was to restrain a state or its officers or agents from activity directed by its legislature. In a dual system of government in which, under the Constitution, the States are sovereign, save only as Congress may constitutionally subtract from their authority, an unexpressed purpose to nullify a state's control over its officers and agents is not lightly to be attributed to Congress.

*Id.* at 350–51, 63 S.Ct. at 313. A municipality is not itself sovereign and, accordingly, is entitled to the *Parker* exemption "only to the extent that [it] acted pursuant to a clearly articulated and affirmatively expressed state policy." *Community Communications Co. v. City of Boulder,* 455 U.S. 40, 54, 102 S.Ct. 835, 842, 70 L.Ed.2d 810 (1982), *citing, City of Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 413, 98 S.Ct. 1123, 1136, 55 L.Ed.2d 364 (1978). A two-prong test must be satisfied to establish a state policy sufficient to confer *Parker* immunity upon a municipality. "The legislature must have authorized the challenged activity, *and* it must have done so with an intent to displace competition." *Gold Cross Ambulance & Transfer v. City of Kansas City,* 705 F.2d 1005, 1011 (8th Cir.1983) (citations omitted) (emphasis added). "[A] sufficient state policy to displace competition exists if the challenged restraint is a necessary or reasonable consequence of engaging in the authorized activity." *Id.* at 1012–13. (citations omitted).

The City of Jefferson City asserts that the first element of the two-prong *Parker* immunity test has been met in this case.

The City asserts that the challenged activity in this case is the regulation and control of cable television businesses and that such activity has specifically been authorized by the Missouri legislature.[1] The plaintiff, however, asserts that the challenged activity in this case is an alleged conspiracy between certain City officials and defendant TCI.

The plaintiff in this action has alleged a conspiracy between certain City officials and defendant TCI to restrain and monopolize trade. Plaintiff alleges that on April 20, 1982, the City Council voted in favor of awarding a franchise to the plaintiff which would have allowed the plaintiff to deliver cable television to the City of Jefferson City. Plaintiff further alleges that the Mayor then vetoed the franchise award. The veto, plaintiff alleges, was a result of a conspiracy with defendant TCI and was in violation of state law because the Mayor had a conflict of interest which prohibited him from participating in the bid procedure. The Mayor allegedly was employed at the local telephone company, from whom defendant TCI rented space for its cable. Because of the foregoing allegations, plaintiff alleges that the defendant City is unentitled to *Parker* immunity.

■■ In *Westborough Mall v. City of Cape Girardeau, Missouri,* 693 F.2d 733 (8th Cir.1982), the Eighth Circuit ruled that *Parker* immunity did not, as a matter of law, exempt the city from liability where

the plaintiff alleges an illegal conspiracy. *Id.* at 746.

In *Westborough Mall* the plaintiffs alleged "a conspiracy to thwart normal zoning procedures and to directly injure the plaintiffs by illegally depriving them of their property. *Id.* at 746. Such action, the Court held, was not ". . . in furtherance of any clearly articulated state policy." *Id.* Thus, plaintiff Central asserts that the *Parker* immunity is unavailable to the City in this case because a conspiracy to circumvent competitive bid procedures, to interfere with plaintiff's prospective business relationships, and to deprive the plaintiff of a franchise is not in furtherance of any clearly articulated state policy. Essentially, plaintiff asserts that these acts exceed the scope of activities contemplated by the Missouri legislature. Well-pleaded material allegations are deemed admitted for purposes of determining whether a cause of action has been stated; thus, plaintiff's complaint against the City cannot be dismissed at this point because of *Parker* immunity.

### 2. *Noerr-Pennington Doctrine*

■■ The defendants assert that plaintiff's anti-trust claims are barred by the *Noerr-Pennington* doctrine. "The *Noerr-Pennington* doctrine exempts from the anti-trust laws lobbying and other joint efforts by private individuals to obtain legislative or executive action." *Westborough Mall v. City of Cape Girardeau,* 693 F.2d 733, 745 (8th Cir.1982) (citation omitted).

---

**1.** The Missouri legislature has expressly authorized the City to regulate telephone poles and excavations in and under its streets and rights of way. Mo.Rev.Stat. § 77.520 (1978). The Missouri Supreme Court has determined that municipalities have an "indispensible duty" to control the use of their streets. *Planned Industrial Expansion Authority v. Southwestern Bell Telephone Co.,* 612 S.W.2d 772, 776 (Mo. en banc 1981). In light of this traditional duty to regulate, the Missouri Supreme Court has held:

The rule must be considered settled, that no person can acquire a right to make a special or exceptional use of a public highway, not common to all citizens of the state, except by grant from the sovereign power.... The power to grant franchises resides in the state, and a city, in granting a franchise, acts as agent for the state.

*Shartel ex rel. City of Sikeston v. Missouri Utilities Co.,* 331 Mo. 337, 53 S.W.2d 394, 397 (en banc 1932). In *Cablevision, Inc. v. City of Sedalia,* 518 S.W.2d 48 (1974), the Missouri Supreme Court held inherent within a municipality's "broad power of control over the streets" is the power to regulate cable television. *Id.* at 52. Before a cable company could operate in a city, "some sort of grant from the city would be necessary, inasmuch as the installation of the operation of the system would involve the use of the city streets." *Id.* A city not only has the right to grant a cable company the privilege to use its streets but, according to the Missouri Supreme Court, it can reserve in its franchise grant the right to approve the rates set by cable companies. *Id.* at 54.

The plaintiff has alleged that defendant TCI engaged in unlawful conduct and employed illegal means to influence the City, thus the *Noerr-Pennington* doctrine may not be relied on to exempt the defendants from anti-trust liability at this stage of the proceedings. *Westborough Mall v. City of Cape Girardeau*, 693 F.2d 733, 745–46 (8th Cir.1982).

### 3. *Tenth Amendment*

■ The City asserts that the Tenth Amendment mandates rejection of the plaintiff's anti-trust claims. The Tenth Amendment bars the operation of any federal enactments that "directly displace the States' freedom to structure integral operations in the areas of traditional government functions...." *National League of Cities v. Usery*, 426 U.S. 833, 851, 96 S.Ct. 2465, 2474, 49 L.Ed.2d 245 (1976).

■ In *Hodel v. Virginia Surface Mining and Reclamation Ass'n, Inc.*, 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981), the Supreme Court set forth the following test to be used in determining if the Tenth Amendment has been violated by the challenged federal statute:

> First, there must be a showing that the challenged statute regulates the "States as States." (citations omitted). Second, the federal regulation must address matters that are indisputably "attributes of state sovereignty." (citations omitted). And third, it must be apparent that the States' compliance with federal law would directly impair their ability "to structure integral operations in areas of traditional functions."

*Id.* at 287–88, 101 S.Ct. at 2366. Without deciding the first or second prerequisite for invoking Tenth Amendment protection, it is not clear at the pleading stage that compliance with the anti-trust laws in this case would directly impair the ability of the City of Jefferson City to structure integral operations in areas of traditional governmental functions. Thus, the motion to dismiss based on Tenth Amendment grounds must be denied.

### 4. *"Single Trader" Defense*

■ The City of Jefferson City asserts that it is protected from antitrust liability on plaintiff's conspiracy claims by the *Colgate* doctrine. The Supreme Court in *United States v. Parke, Davis & Co.*, 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960), stated that the *Colgate* doctrine meant

> ... no more than that a simple refusal to sell to customers who will not resell at prices suggested by the seller is permissible under the Sherman Act. In other words, an unlawful combination is not just such as arises from a price maintenance agreement, express or implied; such a combination is also organized if the producer secures adherence to his suggested prices by means which go beyond his mere declination to sell to a customer who will not observe his announced policy.

*Id.* at 43, 80 S.Ct. at 511. Thus, the *Colgate* doctrine allows manufacturers to set suggested retail prices and to refuse to sell to retailers who do not abide by those suggested prices. The doctrine is inapplicable in the instant case. The plaintiff has alleged a conspiracy between the City and a competitor to exclude the plaintiff from the cable television market in the City of Jefferson City. A city does not have by virtue of the *Colgate* doctrine, an absolute right to determine which businesses can compete within its environs. The dismissal of the complaint on the basis of the *Colgate* doctrine is denied.

### 5. *Substantive Allegations*

■ The defendants assert that plaintiff has failed to state a cause of action for violation of the anti-trust laws. It is well-settled that in determining whether a complaint states a cognizable claim, the complaint must be construed in the light most favorable to the plaintiff, and it should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). As the Su-

preme Court noted in *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), it is not the function of the reviewing court to assess the merits of a particular claim when ruling on a motion to dismiss but, rather, to determine whether the plaintiff may introduce evidence to support his claim. Thus, although it may ultimately develop that the plaintiff is not entitled to recover on its antitrust claims, it would be premature to rule that the plaintiff cannot properly establish any facts which would meet the legal requirements necessary to recover under the anti-trust laws.

The scope of a court's inquiry on a Rule 12(b)(6) motion is limited to the pleadings. However unlikely it may be that the plaintiff can support its allegations, the Court cannot dismiss the complaint for failure to state a cause of action. Nor would it be appropriate for the Court to treat the motion to dismiss as a motion for summary judgment pursuant to F.R. Civ.P. 12(b). Before a motion to dismiss which contains extra-pleading material can be treated by the Court as a motion for summary judgment, all parties must be given a reasonable opportunity to present pertinent evidence. In this case, the extra-pleading matters asserted by the defendants may more efficiently and appropriately be considered in a motion for summary judgment.

### B. *Constitutional Claims*

Plaintiff in Count Eleven asserts that the City and TCI conspired to deprive plaintiff of its legally-protected rights, contrary to 42 U.S.C. § 1985(3). Section 1985(3) requires that there be "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Plaintiff has not alleged that an "invidiously discriminatory animus" was behind the defendants' alleged conspiracy. Plaintiff asserts in response to the motion to dismiss that the defendants sought to prevent the award of a franchise to any company other than TCI, thus discriminating against a class comprised of businesses competing for the Jefferson City cable television market. Section 1985(3) does not "... reach conspiracies motivated by economic or commercial animus." *United Brotherhood of Carpenters & Joiners v. Scott*, —— U.S. ——, ——, 103 S.Ct. 3352, 3360, 77 L.Ed.2d 1049 (1983). A class comprised of cable television companies is insufficient to support a cause of action for violation of § 1985(3). *See McLellan v. Mississippi Power & Light Co.*, 545 F.2d 919, 928 (5th Cir.1977) (discussion of artfully contrived classes found to be unprotected by § 1985(3)). The plaintiff has not stated a cause of action under 1985(3).

Plaintiff's other allegations of constitutional violations are sufficient and the motion to dismiss as to these violations will be overruled.

### C. *Common Law Claims*

#### 1. *Sovereign Immunity*

The City asserts that it is immune from plaintiff's common law tort claims by virtue of the doctrine of sovereign immunity. While municipalities are not liable for torts occurring during the performance of governmental functions, they are liable for torts arising out of a proprietary function. *Davis v. City of St. Louis*, 612 S.W.2d 812, 814 (Mo.App.E.D. 1981). "Through use of the 'governmental-proprietary dichotomy,' liability or non-liability of a municipality for its torts has come to depend upon the character of the act performed, not the nature of the tort." *Id.* (citation omitted). An act performed for the common good of all is a governmental act, while an act performed for the benefit or profit of the municipality as a corporate entity is a proprietary act. *Id.* A regulation beyond the mere right to use a street has been held by the Missouri Supreme Court to be a proprietary function. *State v. Light & Development Co.*, 246 Mo. 618, 152 S.W. 67, 75 (1912). The regulation by the City of the cable television business is a proprietary function and sovereign immunity does not apply.

## 2. *Substantive Allegations*

[18]  Plaintiff has alleged both tortious interference with a legitimate business expectancy and intentional interference with prospective contractual relations. These claims are redundant. The Missouri Supreme Court has declared that "reasonable expectancies of commercial relations" are protected from tortious interference. *Fisher, Spuhl, Herzwurm & Associates, Inc. v. Forrest T. Jones & Co.,* 586 S.W.2d 310, 315 (Mo. En banc 1979) citing *Downey v. United Weatherproofing, Inc.,* 363 Mo. 852, 858, 253 S.W.2d 976, 980 (1953). Plaintiff has stated a cause of action for tortious interference in Count Twelve; Count Fourteen, therefore, is dismissed as redundant. The claim set forth in Count Fourteen for tortious interference with prospective contractual relations is simply a restatement of the claim set forth in Count Twelve for tortious interference with a business expectancy.

In accordance with the foregoing, it is hereby

ORDERED that Counts Eleven and Fourteen are dismissed. It is further

ORDERED that the plaintiff respond within twenty (20) days to the pending motion for summary judgment filed by defendant TCI.