Marie GASSEN, Appellant,

v.

George H. WOY, M.D., Respondent.

No. WD 41489.

Missouri Court of Appeals, Western District.

Jan. 16, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 27, 1990.

Application to Transfer Denied April 17, 1990.

Leonard K. Breon, Breon and Leffler, Warrensburg, for appellant.

William E. Quirk, Kirk J. Goza, and Thomas A. Sheehan, Shughart, Thomson & Kilroy, P.C., Kansas City, for respondent.

Before MANFORD, P.J., and SHANGLER and CLARK, JJ.

CLARK, Judge.

This is a medical negligence case in which the jury returned a verdict in favor of defendant George H. Woy, M.D. Plaintiff Gassen appeals contending the trial court erred in the admission of testimony from expert witnesses and in failing to grant a new trial when it appeared that six members of the jury had not accurately responded to questions posed during voir dire.

Appellant's cause of action originated when she suffered back injuries in a fall. Based on a diagnosis that appellant had sustained a herniated disc, three successive surgeries were undertaken, the first two by Dr. Woy and a third by a physician against whom appellant also made claim. Settlement was reached between appellant and the second doctor, as well as with the store in which appellant was injured, and the cause was submitted to the jury only as to Dr. Woy. The jury found for Dr. Woy.

It was undisputed that appellant had become disabled as a result of a fall and that treatment given her had been unsuccessful. Appellant contended that her condition had been incorrectly diagnosed, that Dr. Woy's treatment had been negligent and that she would have recovered from the injury but for the intervention of the surgery by Dr. Woy. Respondent's evidence was that the diagnosis of a herniated spinal disc had been correct and that the surgery was necessary, even though the result had not been to remedy the condition.

The question of diagnosis was significantly affected by the interpretation of radiographic studies made by Dr. Gerald McManus with whom Dr. Woy consulted before undertaking the first surgery. The x-rays taken by Dr. McManus were introduced in evidence by appellant as exhibits in her case. Appellant's expert witness, Dr. Joseph Lichtor, testified that the exhibits did not show a herniated disc, leading to the conclusion, upon which appellant's case was based, that the surgery was not indicated and was unnecessary.

Appellant's first point of error takes issue with the trial court's ruling on an aspect of testimony by defendant's expert medical witness, Dr. Patrick Bowman. In the progress of the trial, appellant's attorney discovered that Dr. Bowman's opinion as to interpretation of the x-ray films would be included in his testimony. Objection to this evidence was expressed because appellant had not deposed Dr. Bowman on this subject. When Dr. Bowman was deposed by appellant, the doctor stated he had not seen the x-rays. Appellant therefore assumed Dr. Bowman would not be

questioned at trial concerning a diagnosis made from the films. Appellant expressed surprise that the expert witness would testify on the subject and claimed to be unprepared to cross-examine Dr. Bowman if he were allowed to express his opinion.

The court noted the objection and informed appellant's attorney that a recess would be taken so that he could interview Dr. Bowman on that aspect of his anticipated testimony. Counsel refused the opportunity, saying:

> Judge, I can't. It won't cure it. It just won't cure it. I'm afraid if I talk to him that this record would be such it would be perceived as me waiving this objection * * *.

Dr. Bowman then was allowed to testify, over appellant's objection and request that the testimony be excluded, and expressed his opinion as to the interpretation of the x-rays. He stated, in substance, that the films did show a herniated disc for which surgery was the indicated treatment.

It is appellant's contention that the trial court should have sanctioned defendant for a failure to update discovery by informing plaintiff that Dr. Bowman had later seen the x-rays and would testify on the subject. Appellant says the appropriate sanction would have been to exclude the testimony. We agree that there was a continuing duty on defendant to advise plaintiff of the subject matter upon which Dr. Bowman was expected to testify as an expert, but we do not find that the action by the court in this case constituted an abuse of discretion.

Under Rule 56.01(b)(4), a party is entitled to obtain through pre-trial discovery by interrogatories or by deposition the facts known and opinions held by experts whom the other party expects to call as a witness at trial. Where a party has made a response to interrogatories and subsequently learns that the response is no longer true, although correct when made, he is under a duty seasonably to amend the response. Rule 56.01(e)(2). The rules make no express provision, in the case of pre-trial discovery by deposition, for an obligation to supplement responses under similar circumstances where a truthful answer when given later ceases to be correct. Considered as a whole, however, the rules and the case authority suggest that such duty is implied as a component of the discovery process.

In *Crompton v. Curtis–Toledo, Inc.*, 661 S.W.2d 645 (Mo.App.1983), a service letter case, the plaintiff stated on deposition, and by interrogatory answers, that he did not remember the name of the company manager who had rejected his application for employment, allegedly because of statements in the service letter. That person, however, was called as a witness for plaintiff and was allowed to testify over defendant's objections. The opinion reversed a judgment for plaintiff on the ground that defendant had been prejudiced by the failure of plaintiff to disclose the identity of the prospective witness. The court held plaintiff to have been under a duty to supplement his responses to discovery once the name of the company manager was known. The defendant was entitled to rely on plaintiff's deposition answer as true unless and until a supplementary response was furnished.

The situation involving an expert witness and pre-trial discovery of the expert's opinion as well as the facts on which it was based is reported in *State ex rel. State Highway Comm'n v. Pfitzinger*, 569 S.W.2d 335 (Mo.App.1978). There, an expert appraisal witness was deposed and testified that his opinion of value in a condemnation case was based on the cost of development method. Prior to trial, however, the witness reworked his appraisal using a comparable sales approach. The other party to the case was not informed in advance that this change had been made in the use of facts to support the witness's opinion. The court at trial, on objection, refused to allow the witness to testify concerning the price of any comparable sale not previously identified in the deposition. That decision was affirmed for the reason that a continuing duty of disclosure required that the adverse party be notified when the expert changed the factual ground for his opinion.

We conclude that the rules and the case law establish a principle that when an expert witness has been deposed and he later changes his opinion before trial or bases that opinion on new or different facts from those disclosed in the deposition, it is the duty of the party intending to use the expert witness to disclose that new information to his adversary, thereby updating the responses made in the deposition. In this case, once the defendant had exhibited the x-rays to Dr. Bowman and decided to elicit Dr. Bowman's opinion concerning a diagnosis made from the x-rays, the duty arose to inform plaintiff of the fact.

Having decided the issue regarding the basic principle, the next question is whether appellant thereby becomes entitled to a new trial. It will be recalled from earlier portions of this opinion that the trial court offered appellant the opportunity to interview Dr. Bowman before he testified and the offer was refused. The question is whether the court abused its discretion by limiting appellant to that option and denying the request that Dr. Bowman be precluded from testifying at all about the x-rays.

A trial court is vested with broad discretion as to its choice of a course of action during trial when the introduction of evidence is challenged on the ground that it has not been disclosed in response to appropriate discovery. In the sound exercise of that discretion it may admit or reject such evidence or determine and impose other appropriate sanctions. *Hurlock v. Park Lane Medical Center, Inc.*, 709 S.W.2d 872, 879 (Mo.App.1985).

Here, the sanction selected by the trial court in response to appellant's well founded objection to the testimony by Dr. Bowman was to allow appellant time to prepare for cross-examination by interviewing the witness before he testified. This opportunity was rejected out of hand. Thus, the question is not whether enough time was allowed or whether the trial should have been recessed to the next day. Appellant sought only exclusion of the evidence.

These facts do not present a case in which the trial court may be convicted of an abuse of discretion. There is no showing that the remedy of an opportunity to interview Dr. Bowman would not have remedied the non-disclosure, a contention appellant could have advanced only upon testing the value of an interview. Certainly, the arbitrary exclusion of all evidence in such cases is not the only option available to the trial court, although that sanction is open. The very nature of the discretion vested in the trial court recognizes that each case must be determined on its own peculiar facts which bear on the question of whether that discretion has been abused. *State ex rel. Mo. Highway and Transp. Comm'n v. Pully*, 737 S.W.2d 241, 246 (Mo.App.1987).

The opportunity to interview Dr. Bowman was an appropriate sanction for the non-disclosure of all the facts to be utilized by Dr. Bowman in his testimony. That remedy has been suggested in similar circumstances. *Crompton v. Curtis–Toledo, Inc.*, 661 S.W.2d at 651. Appellant should have availed herself of the opportunity and, if the result was not a satisfactory preparation to meet the testimony, other relief could have been requested. Appellant's first point is denied.

In her second point, appellant contends the trial court erred when it refused her offer of proof in rebuttal consisting of selected portions from deposition testimony of Dr. David Scherr, a medical expert witness of the dismissed defendant store where appellant suffered her injury. The substance of Dr. Scherr's proffered testimony was a disagreement with the interpretation made by Drs. Bowman and McManus of the x-ray films. His opinion was that appellant appeared to have sustained an "abnormal soft tissue bulge" and not a ruptured lumbar disc. Appellant suggested that the evidence was proper rebuttal to counter the testimony of Dr. Bowman. The court refused to admit the evidence on the ground that it was not rebuttal but was evidence appropriate to appellant's case in chief.

Admission of rebuttal evidence is a matter largely within the discretion of the trial court. *Chrisler v. Holiday Valley,*

*Inc.*, 580 S.W.2d 309, 314 (Mo.App.1979). A party cannot, as a matter of right, offer in rebuttal evidence which was proper or should have been introduced in chief, even though it tends to contradict the adverse party's evidence and, while the court may in its discretion admit such evidence, it may and generally should decline to admit the evidence. *Bean v. Riddle*, 423 S.W.2d 709, 719 (Mo.1968); *Siebern v. Missouri–Illinois Tractor and Equip. Co.*, 711 S.W.2d 935, 940 (Mo.App.1986).

■ The deposition testimony by Dr. Scherr was not rebuttal evidence. The central issue in the case was the correct interpretation of the x-rays. Appellant attempted to prove by the testimony of Dr. Lichtor that the films did not depict the condition of a herniated disc. The opinions expressed by defendant's witnesses were to the contrary. Dr. Scherr was merely expressing another opinion corresponding to some extent with that of appellant's witness Lichtor. It did not introduce any new fact into the case and it did not qualify as rebuttal merely because it tended to contradict the testimony of Dr. Bowman. The appellant was not entitled, as a matter of right, to admission of the evidence. It follows that there was no abuse of the court's discretion in refusing to admit the testimony of Dr. Scherr.

■ In a final point, appellant contends the trial court erred when it failed to grant her a new trial because of alleged juror misconduct. According to post-trial interviews conducted by appellant, six of the persons who served on the jury admitted they had heard or seen prior to the trial "negative advertising and publicity concerning the medical/legal crisis." Appellant says she is entitled to a new trial because none of those persons responded to counsel's voir dire question, "Is there anyone on the jury panel who has read, heard or seen anything negative that has created a bad feeling against someone who is seriously, and in this case totally and permanently disabled, from filing legal action * * *? Anybody feel that way?" Appellant agrees that the failure of the venirepersons to respond affirmatively to the

question did not amount to intentional concealment of material information, but she says her right to a fair trial was nonetheless compromised.

Unintentional non-disclosure of information by prospective jurors may or may not require a new trial. An unintentional non-disclosure of information not connected with the case or bearing on the prospective juror's ability to evaluate the evidence fairly does not necessarily show prejudice. Where non-disclosure is unintentional and reasonable, the relevant inquiry is whether the presence of that person or persons on the jury may have influenced the verdict so as to prejudice the party seeking the new trial. Prejudice is a determination of fact for the trial court, its finding to be disturbed on appeal only for an abuse of discretion. *Williams by Wilford v. Barnes Hosp.*, 736 S.W.2d 33, 37 (Mo. banc 1987), and cases there cited.

There is no abuse of discretion shown in this case. First, there is no conflict, and hence no non-disclosure, between the statements made by the jurors in the post-trial affidavits and the absence of responses to the voir dire question. The latter included the important phrase, "that created a bad feeling" against persons suing for damages. Even though the jurors did subsequently acknowledge having seen negative advertising on the subject of medical tort claims, none said the advertising caused them to have any unfavorable view of plaintiff, her suit or even damage claimants generally. The mere fact of exposure to advertising publicity does not necessarily include a conversion of all readers or viewers to the message distributed. Appellant failed to make any showing that the six jurors interviewed had any negative opinion about appellant or her case in consequence of the material to which they had been exposed prior to trial.

Second, the link between the asserted non-disclosure and prejudice to appellant, even overlooking the difference between the voir dire question and the post-trial affidavits, is inconclusive and non-persuasive. The sense of the somewhat lengthy and potentially confusing voir dire

question[1] is whether any pre-trial exposure of the panel members to media publications would prevent a prospective juror from awarding appellant fair and just compensation. By its verdict in the case the jury found no liability on Dr. Woy and therefore the issue of compensation to appellant was never reached. Arguably, because any bias of jury members against awarding substantial damages did not affect the actual verdict, there was no prejudice to appellant. That circumstance is alone sufficient to defeat the claim on appeal of an abuse of discretion. Appellant's final claim of error is rejected.

The judgment is affirmed.

All concur.

1. "Is there anyone on the jury panel who has read, heard, or seen anything negative that has created a bad feeling against someone who is seriously, and in this case totally and permanently disabled, from filing legal action and

having twelve people on a jury like you folks to arrive at what you believe is fair and just compensation for what she has gone through and what she is going to go through for the rest of her life?"