**Lynn Otis MATTHEWS and Mary Jean Matthews, Plaintiffs/Respondents,**

**v.**

**CITY OF FARMINGTON, Missouri, Defendant/Appellant.**

**No. 59985.**

Missouri Court of Appeals, Eastern District, Southern Division.

April 7, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 6, 1992.

---

Stefan J. Glynias, Lisa A. Green, Evans & Dixon, St. Louis, for defendant/appellant.

Clinton B. Roberts, Roberts & Roberts, Farmington, John J. Donnelly, St. Louis, for plaintiffs/respondents.

GRIMM, Judge.

In this jury-tried case, City of Farmington appeals from a judgment in favor of plaintiffs, Lynn Otis and Mary Jean Matthews. Plaintiffs' home was destroyed when a high-voltage power line maintained by City came into contact with an uninsulated service line connected to plaintiffs' home, causing a fire.

City raises five points on appeal. It contends the trial court erred (1) in overruling City's motion for a directed verdict, j.n.o.v., and new trial because plaintiffs failed to establish a cause of action or proximate cause; (2) in allowing plaintiffs' expert to express opinions not disclosed in deposition; (3) in allowing plaintiffs (a) to inquire into the tree trimming and licensure policy of City, (b) "to introduce evidence of subsequent tree trimming ...," (c) "to introduce photographs taken the day of trial [showing] the tree limbs interfering with electrical lines," and (d) to present expert testimony on irrelevant matters; (4) in giving plaintiffs' verdict directing instruction; and (5) in allowing "plaintiffs' expert to offer opinions on matters constituting questions of law." [1] We affirm.

I.

Plaintiffs live at 406 South Franklin Street in Farmington. Franklin is a north-south street intersected by Third Street, which runs east and west. Across Franklin from plaintiffs' home is the Holley property at 202 Third Street. For clarity, we attach a diagram; it depicts the location of the streets and houses, as well as some utility poles, electric lines, and trees.

On the same side of Third Street and directly north of the Holley house are utility poles. On a pole immediately west of the Holley house is a transformer. A 2400–volt line runs to that pole and transformer. From that pole to a utility pole just east of the Holley house, both a 2400–volt line and a lower voltage line (110, 120, or 220–volt) run. (The 2400–volt line was basically above the lower voltage line.) From this latter utility pole, electric service lines run to the Holley house, as well as to five other buildings, including plaintiffs' house.

Along the Franklin street side of the Holley house, a row of trees runs north and south. The row of trees intersect power lines which run along Third Street in front of the Holley house. Another row of trees runs parallel to the power lines along Third Street.

Ms. Holley arranged for the trees at 202 Third Street to be trimmed. Before the tree trimming began, City employees disconnected the service line attached to the Holley home. It appears the tree trimmers "requested [the] service line to be removed so they could trim limbs."

The trunk of the tree to be trimmed was located 4 feet from the service line running to the Holley house and approximately 14½ feet south of the pole carrying both the 2400–volt line and the six low-voltage service lines. The limb which fell, however, was directly above the 2400–volt line. The City disconnected only the service line to the Holley house. The tree trimmers, who were not City employees, encountered difficulties with the large limb that was directly above the 2400–volt line. The limb "got away" from the trimmers and fell onto the 2400–volt line. That line severed and came in contact with the service line running to plaintiffs' home. The contact between the two lines caused an electrical surge to run through plaintiffs' service line, short-circuiting the electrical wiring and causing a fire. Plaintiffs' home was badly damaged.

II.

In its first point on appeal, City contends that the trial court "abused its discretion in overruling [City's] motion for directed verdict, [j.n.o.v.], and new trial because plain-

1. City's motion to file a supplemental legal file, including the designation of plaintiffs' expert and the deposition of City's expert, is denied. These items are unnecessary in our consideration of the case.

tiffs failed to state a cause of action ... and ... failed to establish proximate cause...." Specifically, City makes two contentions: (1) plaintiffs failed to plead facts establishing an exception to sovereign immunity, and (2) the negligence of the tree trimmers was an intervening cause severing the causal link between any negligence on City's part and plaintiffs' damages.

Addressing City's arguments in order, we first conclude that plaintiffs sufficiently pled that City was acting in its proprietary capacity; therefore, plaintiffs established an exception to sovereign immunity. *Davis v. City of St. Louis*, 612 S.W.2d 812, 814 (Mo.App.E.D.1981). The function of the pleadings is to "set forth facts sufficient to apprise defendant ... of the cause it was required to defend." *Id.* Plaintiffs' petition did so.

In their second amended petition, plaintiffs alleged that City "was a supplier of electricity ... to the Plaintiffs," and that City "sold the product of electricity to the Plaintiffs." In its answer, City admitted "it operates a city municipal electric utility which provides electrical service to residents."

In *Counts v. Morrison-Knudsen, Inc.*, 663 S.W.2d 357, 362 (Mo.App.S.D.1983), the court noted that a city acts in its proprietary capacity when it "operates an electric power plant...." The court held that because "the operation of a power plant is a proprietary function, it would be anomalous if ... the building of such a plant was [not].... The anomaly does not exist." *Id.* Likewise, a city acts in its proprietary capacity when it acts as "a supplier of electricity...." Plaintiffs sufficiently pled an exception to sovereign immunity.

Also in its first point, City argues that plaintiffs failed to prove that City's negligence was the proximate cause of the fire which destroyed plaintiffs' home. City contends the negligence of the tree trimmers hired by Ms. Holley was an "intervening resulting cause." "An intervening resulting cause is a new and independent force which so interrupts the chain of events initiated by defendant's negligence as to become the responsible, direct, proximate cause of the injury." *Love v. Deere and Co.*, 684 S.W.2d 70, 75 (Mo.App.W.D. 1985).

Plaintiffs submitted their cause of action to the jury on the theory that City was negligent in failing to de-energize the transmission line which served plaintiffs while tree trimmers were working around the line. Plaintiffs maintained this was negligent because City was aware that the tree trimmers were working in that vicinity. The actions of the tree trimmers were not "a new and independent force;" rather, they were elements of a dangerous condition of which City was aware. Failing to guard against the foreseeable negligence of a third party "'is one of the hazards which makes a person negligent, [and] such an act of a third party ... does not prevent that person from being liable for the harm caused thereby.'" *St. John Bank & Trust Co. v. City of St. John*, 679 S.W.2d 399, 402 (Mo.App.E.D.1984) (quoting *Scheibel v. Hillis*, 531 S.W.2d 285, 288 (Mo. banc 1976)).

While the acts of City alone would not have caused plaintiffs harm, City's acts coalesced with those of the tree trimmers to "cause a single, indivisible injury" for which City could be held liable. *McDowell v. Kawasaki Motors Corp. USA*, 799 S.W.2d 854, 861 (Mo.App.W.D.1990). Point denied.

III.

In City's second point, City claims the trial court "abused its discretion in permitting plaintiffs' expert to testify to opinions not testified to in deposition of which defense counsel had not been apprised...." City refers to two separate portions of expert's testimony. First, expert testified that City's policy which allowed limbs to remain above electric lines was not a good one; second, expert testified that insulation of the service line into the plaintiffs' home would have prevented the fire. Plaintiffs agree that the opinions were not in expert's prior depositions.

Plaintiffs' expert, in his second deposition, testified that he did not "know the proximity ... of the tree relative to the line." However, later in his deposition, he stated that "if I receive information that those tree limbs actually did overhang the power line, then I would have an opinion ... that the Defendant failed to maintain his power line free from overhanging limbs...."

At trial, Ms. Matthews testified on direct examination, without objection, that the limb which fell and broke the electric line was over the electric lines. On cross-examination by City's attorney, she testified the top of the tree was "over the wires." Although City had taken Ms. Matthews' deposition, City did not seek to impeach her testimony.

Later, on direct examination, plaintiffs' expert was asked if allowing the tree limb to overhang the line was good policy, and he replied that it was not. Defendant objected after the question was answered, and asked for a mistrial. The request was denied. However, the court instructed the jury to disregard the last question and answer, and further told the jury "not to consider that."

As to this incident, City's point is not well taken. City charges the trial court with "permitting the plaintiffs' expert to testify to opinions not testified to in deposition." Here, the trial court sustained City's objection, and instructed the jury not to consider the testimony.

The trial court did deny the request for a mistrial. However, as is often stated, the granting of a mistrial is a "drastic remedy," and an appellate court reviews such denial only for abuse of discretion. We find no abuse of discretion in denying this request.

■ City's other complaint in this point concerns plaintiffs' expert's opinion that insulation of the service line into the plaintiffs' home would have prevented the fire. Plaintiffs claim they elicited their expert's opinion to rebut testimony of City's expert.

Plaintiffs' attorney called City's expert as a witness. Among other things, City's expert was asked if the service line "had been insulated for 600 volts," would that insulation have prevented the fire. City objected on lack of foundation; the objection was overruled. City's expert replied, "Well, I'm not sure." Later, he was asked if that insulation would have provided some protection; he replied, "It may or it may not."

Thereafter, plaintiffs' expert was asked if he had an opinion as to whether insulation of the service line would have protected against this fire. City's attorney objected, claiming surprise if the expert gave an anticipated positive answer. The claim of surprise was based on an answer given at expert's deposition, when he said he had no "opinion as to whether or not the Defendant failed to properly design and maintain the power lines" to prevent power surges and excessive voltage from entering plaintiffs' home.

In the colloquy at the side bar, plaintiffs' attorney pointed out that evidence "came out today at trial" that was unexpected, namely, that Ms. Matthews testified the limb was immediately above the power lines. Apparently, based on the fire department report, the attorneys and some of the witnesses believed the limb was 14 feet away from the power lines. Because of Ms. Matthews' testimony, and that of City's expert, plaintiffs' attorney claimed these were new facts developed at trial and he should be permitted to inquire of his expert based on these new facts.

After hearing both counsel's statements, the trial judge responded: "I have no reason to believe that the plaintiff knew anything other than the 14 foot distance that was in the report." The objection was then overruled. Plaintiffs' expert then testified that if the low volt lines had been insulated with 600–volt insulation, it would have protected the line from the momentary type of contact with the 2400–volt line.

On cross-examination, plaintiffs' expert was confronted with the answer he had given in his deposition. When asked when he formed the new answer which was contrary to his deposition answer, he replied

"today," based on testimony given earlier that day.

In *Gassen v. Woy,* 785 S.W.2d 601 (Mo. App.W.D.1990) "the Western District [in dicta] extended the continuing duty [to supplement interrogatory answers] to deposition questions and answers." *Stallings v. Washington University,* 794 S.W.2d 264, 273 (Mo.App.E.D.1990). As we noted in *Stallings,* the duty imposed by *Woy* "to inform an adversary of an expert's change of opinion or ... the basis of his opinion is triggered when [either] has in fact changed. However, ... *Woy* ... apparently limits this trigger to those changes made before trial." *Id.*

Here, the change occurred during trial. Thus, even if we were to follow *Woy,* it is not applicable. Point denied.

IV.

In its third point, City claims the trial court abused its discretion by allowing plaintiffs to "(A) inquire about the city's policy regarding tree trimmers; (B) introduce evidence of subsequent tree trimming ...; (C) introduce ... photographs ... depict[ing] tree limbs interfering with electric lines; and (D) [permit] plaintiffs' expert to testify to irrelevant matters."

First, we examine City's claim that plaintiffs improperly inquired into City's policy regarding licensure and bonding of tree trimmers. In a pre-trial conference, motions in limine were taken up. On City's motion, the trial court "in general" held that plaintiffs could not inquire into City's licensing and bonding requirements for tree trimmers.

However, at trial, *City's* attorney asked plaintiffs' expert a question involving a hypothetical tree trimmer, inquiring if City should "have done something about that tree trimmer." Plaintiffs' expert responded that tree trimmers "need to be licensed and checked out by some authoritative body...." City did not object to the answer or move to strike it. Later City's attorney, in questioning plaintiffs' expert, referred to "the issue of whether or not the city should have followed up on this tree trimmer ..."

Plaintiffs' attorney later recalled City's expert. Plaintiffs' attorney first inquired as to whether City had "any ordinances with regard to trimmers." Over objection, he replied "They do [sic], but I'm not aware of what to [sic] say." Plaintiffs' attorney then asked him if City ever checked to see if the tree trimmers were "licensed or bonded as required by the city." City's expert replied that "[w]e never did."

"When a part of an improper subject of inquiry has been voluntarily broached by one party, the other party may examine the remainder of that subject...." *Watson v. Landvatter,* 517 S.W.2d 117, 122 (Mo. banc 1974). City opened up the issue of bonding and licensing. The trial court did not abuse its discretion in allowing plaintiffs to make these brief inquiries into City's licensing and bonding requirements.

City also contends the trial court abused its discretion in admitting testimony of "subsequent tree trimming by [City] as such evidence was a subsequent remedial measure and therefore irrelevant." It is well established that evidence of subsequent remedial measures " 'is inadmissible to show antecedent negligence ... but ... may be admissible for other purposes....' " *Atcheson v. Braniff Int'l Airways,* 327 S.W.2d 112, 116 (Mo.Div. 2 1959) (citations omitted). One such other purpose is to show the condition of the accident site at the time of the accident. *See, Hefele v. National Super Markets, Inc.,* 748 S.W.2d 800, 803 (Mo.App.E.D. 1988).

At trial, plaintiffs' attorney asked plaintiff Mary Jean Matthews if she saw City doing any tree trimming after it fixed the electric lines. She responded in the affirmative: "[t]hey got all the limbs off that was over the wires." The trial court did not abuse its discretion in allowing this testimony which showed the condition of the trees at the time of the incident.

Also in its third point, City argues the trial court abused its discretion in admitting photographs showing tree limbs interfering with the power lines involved in

the accident. The photographs were taken the day before trial.

At trial, City objected that the pictures were (1) "not sufficiently probative of any issue to warrant their adverse affect in showing the changed circumstances," (2) misleading, and (3) not "an accurate representation of the circumstances that existed at the time of the incident." In overruling the objections, the trial court observed the exhibits show "the proximity of the trees to the line." The court stated the pictures are relevant and the changes are "an issue for you to argue to the jury about rather than to exclude them from evidence."

"Photographs may be admissible in evidence when taken long after an event and after changes have occurred in the object taken, if such changes are explained." *Berry v. Federal Kemper Ins. Co.*, 621 S.W.2d 948, 951 (Mo.App.S.D.1981). Here, the testimony about the pictures concerned the location of the power lines and the location of the tree, and that the lines and tree were in the same locations as at the time of the incident. Further, Ms. Matthews said there was growth on the trees since 1986. The trial court did not abuse its discretion in admitting these pictures.

City's final contention in point three is that the trial court abused its discretion in permitting plaintiffs' expert to testify (1) that insulation of the service line to plaintiffs' home would have prevented the fire and (2) that the city's tree trimming policy was not a "good policy" because these matters were irrelevant to the issues presented. We reject City's arguments for the same reasons we stated in point two. We add only one comment in response to City's new contention that this testimony was irrelevant to plaintiffs' theory in its verdict director: the evidence was relevant to other allegations in plaintiffs' petition. Point denied.

V.

In City's fourth point, it alleges the trial court "erred in giving plaintiffs' verdict directing instruction insofar as it incorrectly reflected the substantive law, was misleading and confusing and resulted in prejudice to [City]." The challenged verdict director, a not-in-MAI instruction, was patterned after the instruction in *Mrad v. Missouri Edison Co.*, 649 S.W.2d 936, 939 n. 1 (Mo.App.E.D.1983).

We have reviewed City's challenges, which basically are the contentions raised in *Mrad.* In light of the instruction's similarities to the *Mrad* instruction, an extended discussion would have no precedential value. Point denied.

VI.

In its final point, City alleges the trial court "abused its discretion in permitting plaintiffs' expert to offer opinions on matters constituting questions of law."

"[A]llegations of error to be preserved for appellate review must be included in a motion for a new trial." Rule 78.07. City did not raise its final point in the motion for new trial. As a result, this point is not preserved for our review. *Springfield Coca-Cola Bottling Co. v. Beltz,* 793 S.W.2d 642, 643 (Mo.App.S.D.1990). Point denied.

The judgment of the trial court is affirmed.

CARL R. GAERTNER, C.J., and AHRENS, J., concur.

Transformer on pole
Holley
X
THIRD STREET
N
S. FRANKLIN
Plaintiffs
Church
Not to scale
2400 volt electric line
low voltage service lines
utility pole
trunk of tree falling on power line
trees