William **DARNABY**, Plaintiff–Appellant,

v.

Frank D. **SUNDSTROM**, M.D., et al., Defendants–Respondents.

No. 18370.

Missouri Court of Appeals,
Southern District,
Division Two.

March 23, 1994.

Motion for Rehearing or Transfer
Denied April 14, 1994.

Application to Transfer Denied
May 26, 1994.

---

David W. Ansley, Jan Y. Millington, Hall, Ansley, Carmichael, & Gardner, Springfield, for plaintiff-appellant.

David W. Hall, Jr., Richard L. Rollings, Jr., Bussell, O'Neal & Hall, Springfield, for defendants-respondents.

FLANIGAN, Presiding Judge.

Plaintiff William Darnaby filed this medical malpractice action against defendants Frank D. Sundstrom, M.D., and his employer. Prior to the trial, the parties agreed that any verdict in favor or against Dr. Sundstrom would also be a verdict in favor or against his employer. The jury returned a verdict in favor of Dr. Sundstrom. Plaintiff appeals from the judgment entered in favor of both defendants. As used in this opinion, the word "defendant" refers to Dr. Sundstrom.

Plaintiff contends that the trial court erred: (1) in restricting his cross-examination of defendant concerning prior lawsuits against him; (2) in refusing to permit plaintiff's medical expert to testify concerning a 1984 x-ray.

On January 26, 1987, plaintiff was injured when he fell from a forklift. He was seen in the emergency room that day, and on January 29, 1987, became the patient of defendant. X-rays taken at that time revealed a fracture of the tip of the spinous process of the fourth lumbar vertebra. He remained off work for several weeks while receiving conservative treatment from defendant. In April, he returned to work for two weeks. In June, he complained of a significant increase in low back pain.

On July 10, 1987, defendant performed surgery on plaintiff and fused the vertebrae at the L–4, L–5 level. Defendant's brief says: "Defendant initially had intended to perform surgery at the L–5, S–1 level, but in the course of the surgery determined that the instability was at the L–4, L–5 level and operated at this level. Since defendant's focus had initially been on the L–5, S–1 level, he inadvertently misdictated his operative report." The report indicated that the surgery

was performed at the L-5, S-1 level. Plaintiff presented evidence that the surgery was performed at both levels and was unnecessary.

Instruction 8, plaintiff's verdict-director, submitted, in the disjunctive, several acts or omissions of defendant, including: removing a disk from plaintiff's spine when it was not necessary to do so, fusing plaintiff's spine when it was not necessary to do so, or operating at the wrong location on plaintiff's spine.

■ Plaintiff's first point reads: "The trial court prejudicially erred in refusing to allow plaintiff the opportunity to impeach defendant's credibility for truth and veracity, through cross-examination of defendant about prior lawsuits filed or claims made against him, where defendant, in both interrogatory answers and deposition testimony, denied the existence of a claim which was subsequently discovered to have been made against defendant in that such a denial goes directly to the defendant's truth and veracity as a credible witness and plaintiff's claim, in large measure, rested upon the credibility of defendant."

After plaintiff rested, defendant was called as a defense witness. Near the end of plaintiff's cross-examination the following occurred outside the hearing of the jury:

MR. ANSLEY: Your Honor, at this time I would ask to be released of the motion in limine with regard to other lawsuits for the reason that it—that in the discovery phases of this case, Dr. Sundstrom was asked to identify all cases in which he was sued. He listed, I believe, three or four. He omitted a lawsuit that was filed in 1963, I believe, in which he was sued by an individual who received hip surgery from him. Now, the fact that he has been sued, had he fully disclosed and responded to the interrogatory, there would be no reason to inquire of this other—this other lawsuit. But if—by his not disclosing that lawsuit, I believe this goes to the—directly to his credibility as a witness, credibility is one of the most significant issues in this case, and I would ask leave to inquire of the witness on that subject. And I—

THE COURT: Well, do you want to say anything, Mr. Hall?

MR. HALL: Yes, Your Honor. We disclosed by interrogatory answer all the known lawsuits of Dr. Sundstrom. I think that the—I think they date back to the mid 1970s. In his deposition Mr. Ansley also made inquiries regarding those particular lawsuits. And I will get his deposition out here but I believe his response was as Mr. Ansley that's the best—matter of fact he volunteered another one that I didn't even know about in the course of his deposition, he listed another claim or lawsuit. And I don't know if the lawsuit—whether it was a claim or a lawsuit. And, in fact, his response was, Mr. Ansley, that's the best of my recollection of all the lawsuits. That he actually, disclosed, one, two, three, four—four separate lawsuits.

THE COURT: I don't think we're going back 27 years, request is—

MR. ANSLEY: Your Honor, the circumstances of this particular surgery should be foremost in Dr. Sundstrom's mind. I have the certified records of the Circuit Clerk's office which indicates that he was sued because he operated on the wrong hip. And by answers to interrogatories he admits that he operated on the wrong hip and he describes the damages that he has performed by operating on the wrong hip. And this goes clearly towards his credibility, that's the kind of thing that you would expect to remember if you do something like that.

THE COURT: Request denied.

.    .    .    .    .

MR. ANSLEY: Your Honor, may I make a further offer at the evening recess?

THE COURT: Yes, sir.

Later, during a recess, plaintiff's counsel offered Exhibit 82, consisting of records of the Circuit Court of Greene County, in Case 47306, Lucille Lister, Administratrix of the Estate of Roy Lister v. Frank D. Sundstrom, M.D. The following then occurred:

MR. ANSLEY: Exhibit 82 includes the Petition, the Answer, Interrogatories to the plaintiff in which he was asked if he operated on the wrong hip, which he admitted, he also describes what he did to repair the inaccu-

rate surgery. It is plaintiff's position that this is the type of mistake that a physician should remember for the rest of his life. And regardless of the fact that it may have occurred in the '60s, Dr. Sundstrom should be able to remember it.

.    .    .    .    .

THE COURT: That is the surgery on the wrong hip and the lawsuit in 1963, right?

MR. ANSLEY: That's right.

.    .    .    .    .

THE COURT: The objection is sustained.

■ "The law is well settled that where a witness is cross-examined as to a collateral matter, the cross-examiner is bound by the witness' answers and will not be permitted to offer evidence to contradict the witness relative to such answers. The test as to whether the matter is collateral * * * is whether the party seeking to introduce it for purposes of contradiction would be entitled to prove it as a part of his case. If a fact may be shown in evidence for any purpose independently of contradiction, it is not collateral." *Frechin v. Thornton*, 326 S.W.2d 122, 126 (Mo.1959).

In *Overfield v. Sharp*, 668 S.W.2d 220 (Mo. App.1984), the court, referring to the *Frechin* rule, said, at 223:

"Two considerations are served by the rule. The jury is shielded from the interminable proliferation of issues which otherwise would allow the court to go into the merits of all such collateral matters, and instead of trying the one lawsuit, the court might well be called upon to try as many questions as there were collateral matters presented. Also, it avoids the unfairness and the surprise of requiring the opposing party to meet and disprove issues not raised by the pleadings."

"Evidence in any suit should be relevant; and evidence that throws no light on the controversy should be excluded as it tends to confuse the issues and operate to prejudice a party before the jury." *Switzer v. Switzer*, 373 S.W.2d 930, 939[13] (Mo.1964). "Immaterial and incompetent evidence should not be gotten before a jury under the theory it discredits a witness." *Id.* at 939[17].

■ Generally, other acts of negligence are inadmissible to show the actor was negligent on the occasion in question. *Deveney v. Smith*, 812 S.W.2d 810, 812[1] (Mo.App.1991); *Chaney v. Creten*, 658 S.W.2d 891, 893 (Mo. App.1983). The trial court has wide discretion in regard to the examination of witnesses, including impeachment of witnesses for prior inconsistent statements. The court's rulings in regard to examination of witnesses will not be disturbed absent an abuse of discretion. *Deveney*, 812 S.W.2d at 814.

In *Rothschild v. Barck*, 324 Mo. 1121, 26 S.W.2d 760 (1930), an oculist was sued for alleged negligence in the removal of a cataract from plaintiff's eye. Plaintiff offered evidence to show that defendant had performed cataract operations on other patients which resulted in each patient losing the eye. The supreme court affirmed the trial court's rejection of the offered evidence. The court said, at 76: "Even if it would be competent to show that [defendant] had used a lack of care or skill in operations on other patients it would not be relevant in this case. The issue before the jury in this case was whether [defendant] exercised proper care and skill in operating upon the defendant (sic)."

In *Frank v. Environmental Sanitation Management*, 687 S.W.2d 876 (Mo. banc 1985), the court said, at 883–884:

"Generally, appellate courts will not review excluded evidence without a specific and definite offer of proof. *Karashin v. Haggard Hauling & Riggins, Inc.*, 653 S.W.2d 203 (Mo. banc 1983). We carved out an exception to this rule in *State ex rel. State Highway Commission v. Northeast Building Co.*, 421 S.W.2d 297 (Mo.1967). In *Northeast* we recognized the purpose of an offer of proof is to insure the trial court and opposing counsel understand the proposed evidence. Additionally, an offer of proof enables appellate courts to understand claims of error. In *Northeast* an offer of proof was not needed because everybody at trial knew what the testimony would be. Because the objection was based on a category of evidence and could be adequately reviewed, we created an exception to the rule requiring offers of proof. This exception is very narrow. First, it requires a complete understanding, based

on the record, of the excluded testimony. Second, the objection must be to a category of evidence rather than to specific testimony. Third, the record must reveal the evidence would have helped its proponent."

Plaintiff's first point is wrong in stating that defendant, in both his interrogatory answers and his deposition testimony, *denied* the existence of Case 47306 or the claim asserted in it.

During discovery, plaintiff propounded an interrogatory to defendant inquiring whether defendant had ever given his deposition in a medical malpractice action in which he was a party. The interrogatory sought a listing of the lawsuits. In his answer, defendant listed three lawsuits. He made no mention of Case 47306. Plaintiff made no showing that defendant gave his deposition in Case 47306. It is true, however, that defendant listed the three cases in answer to another, more general, interrogatory and made no mention of Case 47306.

When defendant gave his deposition, plaintiff's counsel asked no question concerning Case 47306. At no time did defendant deny the existence of Case 47306 or the claim asserted in it. Case 47306 was dismissed with prejudice prior to trial.

The answer of defendant in Case 47306 contains no admission that he operated on the wrong hip of that patient. In his answers to interrogatories in Case 47306, defendant stated that he operated on the right hip and, in a separate answer, stated that he did not have the plaintiff's consent to operate on the right hip. There was no mention of the left hip or "the wrong hip."

Plaintiff made no offer of proof. He did not inform the court of any specific question he desired to pose to defendant or the answer it was likely to elicit. Although plaintiff, in the bench conference, offered Exhibit 82, his point makes no mention of that exhibit or its exclusion.

The manner, negligent or not, in which defendant treated the patient in Case 47306 was not relevant in this case. *Rothschild, supra.* The issue before the jury in this case was whether defendant exercised proper care

and skill in operating upon plaintiff. *Id.* Defendant's treatment of the patient in Case 47306 was a collateral matter, and plaintiff could not show any negligence there as part of this case.

Exhibit 82, on this record, was not admissible. Although *Frank* delineates a "very narrow" exception to the offer of proof requirement, the requirements for that exception are not present here. In addition to the factual deficiencies in plaintiff's first point, the absence of an offer of proof is fatal. Plaintiff's first point has no merit.

■ Plaintiff's second point is that the trial court erred in excluding Exhibit 48, an x-ray of plaintiff's spine made in 1984 and the opinion of plaintiff's expert, Clark Watts, M.D., with respect to the exhibit. For the reasons which follow, this court holds that plaintiff's second point is valid and necessitates reversal and remand.

■ A trial court has considerable discretion in the exclusion of evidence and, absent abuse of discretion, its action will not be grounds for reversal. *Kelly v. Jackson,* 798 S.W.2d 699, 704[8] (Mo. banc 1990); *Karashin v. Haggard Hauling & Rigging, Inc.,* 653 S.W.2d 203, 205[3] (Mo. banc 1983). "No appellate court shall reverse any judgment unless it finds that error was committed by the trial court against the appellant materially affecting the merits of the action." Rule 84.13(b).[1]

Plaintiff called defendant as his first witness. Defendant testified that he placed "significant emphasis" on the fracture of the inferior tip of the spinous process to vertebra L–4. He said that when that spinous process was fractured it rendered the L–4, L–5 joint unstable. In his opinion it would remain unstable until that joint was fused. That was his opinion prior to surgery and at time of trial.

Although defendant's post-surgical record stated that he had fused L–5, S–1, he testified, under questioning by his own counsel, that he fused L–4, L–5 and that his record was "a mistake in dictation" on his part. Plaintiff's evidence showed that defendant

1. All references to rules are to Missouri Rules of Court, V.A.M.R.

had fused both L–4, L–5 and L–5, S–1 and that defendant's surgery was unnecessary.

In 1989, plaintiff underwent surgery by Dennis Abernathie, M.D., who fused the lower spine from L–4 through S–1. Dr. Abernathie's surgery was necessitated by the result of defendant's surgery.

In addition to the testimony of Dr. Abernathie, plaintiff adduced the testimony of Clark Watts, M.D., who had given a pre-trial deposition. In his deposition, Dr. Watts was not interrogated about Exhibit 48. He did not then know of its existence.

At the trial, plaintiff called Dr. Watts. He testified that the surgery performed by defendant was unnecessary. Plaintiff offered Exhibit 48 in connection with that testimony. Exhibit 48 was an x-ray made of plaintiff's lower spine in September 1984, at a hospital in Sedan, Kansas. The authenticity of Exhibit 48 was never questioned.

There ensued, outside the hearing of the jury, colloquy between the court and counsel concerning defendant's objection to Exhibit 48. The colloquy, and plaintiff's offer of proof through Dr. Watts, occupy 34 pages of the transcript.

Dr. Watts' testimony was given on June 3. During the offer of proof, Dr. Watts testified he first saw Exhibit 48 on June 2. He said that Exhibit 48 did not change the opinion which he had stated in his deposition and that the exhibit supported his opinion. Under questioning by defense counsel, Dr. Watts stated that Exhibit B, a defense exhibit, was the report of the radiologist who made Exhibit 48. Dr. Watts' interpretation of Exhibit 48 was inconsistent with Exhibit B. An x-ray taken in January 1987, Exhibit 4, while plaintiff was under defendant's care, showed the same irregularity of the spinous process of L–4 which, according to Dr. Watts, Exhibit 48 showed. Defendant's objection to Exhibit 48 was that it came as a "complete surprise," was "highly prejudicial," and Dr. Watts had not mentioned Exhibit 48 in his deposition.

The court sustained defendant's objection to Exhibit 48, and Dr. Watts was not permitted to discuss that exhibit before the jury.

During the colloquy concerning Exhibit 48, defense counsel admitted that he received a copy of Exhibit 48 on May 28. A paralegal for plaintiff's counsel stated that she delivered Exhibit 48 to the office of defense counsel on May 22 and gave defense counsel a copy of it on May 28. Defense counsel made no denial of those statements. Defense counsel stated that defendant "and the radiologist, Dr. McMillin, have both looked at Exhibit 48." Dr. McMillin did not testify.

The court described Exhibit 48 as a "pretty important piece of evidence." Plaintiff's counsel asked why defense counsel could not interview Dr. Watts during the lunch hour, and the noon recess was imminent. The court responded: "Because the whole defense up until this juncture is based on events that occurred in '87 and thereafter."

In this court, defendant's brief says:

"The drastic effect the testimony of plaintiff's expert regarding the 1984 Sedan x-ray would have had upon the case was aptly expressed by the trial court in its comment that 'I just think it changes the whole complexity (sic) of the lawsuit, and I'm not inclined to do that.' The court also expressed that 'The whole defense up until this juncture is based on events that occurred in '87 and thereafter.' These comments make it clear that the new opinions plaintiff sought to elicit from his expert would have had a substantial effect on the trial of this case."

After plaintiff rested, defense counsel called defendant as his last witness. Defense counsel offered Exhibit 48. Plaintiff offered no objection, and it was received into evidence. Defense counsel also offered Exhibit 4 and Exhibit B, both of which were received into evidence. Defendant testified concerning all three exhibits. That testimony materially differed from the excluded testimony of Dr. Watts.

Rule 56.01(b)(4) contains the exclusive methods for discovery of facts known and opinions held by experts, otherwise discoverable under Rule 56.01(b)(1) and developed or acquired in anticipation of litigation or for trial.

Rule 56.01(b)(4) provides, in pertinent part:

(a) "A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial by providing such expert's name, address ... and to state the general nature of the subject matter on which the expert is expected to testify...."

(b) "A party may discover by deposition the facts and opinions to which the expert is expected to testify...."

Rule 56.01(e), entitled "Supplementation of Responses," reads:

"A party who has responded to written interrogatories with a response that was complete when made is under no duty to supplement the response to include information thereafter acquired, except as follows:

(1) A party is under a duty seasonably to supplement the response with respect to any question directly addressed to (A) the identity and location of persons having knowledge of discoverable matters and (B) the identity of each person expected to be called as an expert witness at trial and the general nature of the subject matter on which the expert is expected to testify.

(2) A party is under a duty to amend a prior response seasonably if the party obtains information upon the basis of which the party knows that the response (A) was incorrect when made or (B) though correct when made is no longer true.

(3) A duty to supplement responses other than those specified in Rule 56.01(e)(1) or Rule 56.01(e)(2) may be imposed by order of the court, agreement of the parties, or at any time prior to trial through new requests for supplementation of prior responses."

Rule 56.01(e) deals with supplementation of responses to written interrogatories. *Rule 56.01(e) makes no mention of depositions.* Neither in the trial court nor in this court does defendant claim that there was any violation by plaintiff of Rule 56.01(e)(3).

Defendant's brief says: "Under Rule 56.-01(b)(4) the only means a party has to discover the facts and opinions an expert will testify to at trial is by deposition. Nowhere in the deposition of Dr. Watts did he indicate an opinion that the fracture of the spinous pro-cess at the L–4 vertebra existed prior to the accident in 1987. Dr. Watts, in his deposition, stated he did not review any medical records of the plaintiff prior to the emergency room record involving the forklift accident in January 1987."

Seeking to uphold the trial court's ruling with regard to Exhibit 48, defendant relies primarily on *Gassen v. Woy,* 785 S.W.2d 601 (Mo.App.1990). Plaintiff, in turn, relies on *Stallings v. Washington University,* 794 S.W.2d 264 (Mo.App.1990). Both cases were medical malpractice actions and involved the admissibility of x-ray films. In both cases the trial court received into evidence the challenged x-rays, and that ruling was upheld on appeal.

In *Woy,* plaintiff introduced x-rays made prior to the surgery performed by defendant. Plaintiff's medical witness testified that the x-ray did not show a herniated disk and that the surgery was unnecessary. After a verdict in favor of defendant, plaintiff appealed. Plaintiff claimed that the trial court erred in permitting Dr. Bowman, defendant's medical expert, to interpret the x-ray. In a pre-trial deposition taken by plaintiff, Dr. Bowman stated he had not seen the x-ray. Plaintiff claimed surprise and stated he was unprepared to cross-examine Dr. Bowman concerning the x-ray. The trial court informed plaintiff's counsel that a recess could be taken so that he could interview Dr. Bowman. Counsel refused the opportunity. Dr. Bowman testified that the x-ray showed a herniated disk.

The court, referring to Rule 56.01(b)(4) and Rule 56.01(e)(2), said, at 604:

"We conclude that the rules and the case law establish a principle that when an expert witness has been deposed and he later changes his opinion before trial or bases that opinion on new or different facts from those disclosed in the deposition, it is the duty of the party intending to use the expert witness to disclose that new information to his adversary, thereby updating the responses made in the deposition. In this case, once the defendant had exhibited the x-rays to Dr. Bowman and decided to elicit Dr. Bowman's opinion concerning a diagnosis made from

the x-rays, the duty arose to inform plaintiff of the fact."

The court held, however, that plaintiff was not entitled to a new trial because the opportunity to interview Dr. Bowman, which plaintiff declined, was an appropriate sanction for the nondisclosure.

In *Stallings*, the defendant-physician operated on plaintiff in June 1984. In January 1985, plaintiff was operated on by Dr. Brem. At trial, plaintiff used Dr. Brem to prove defendant's negligence. Nine months prior to trial, plaintiff took the deposition of Dr. Post, defendant's medical expert. X-rays taken by Dr. Brem were not furnished by plaintiffs to Dr. Post prior to or at his deposition. At trial, over plaintiff's objection, defense counsel asked Dr. Post questions concerning the x-rays. On appeal, plaintiff argued that defendant had the duty, prior to trial, to disclose that Dr. Post would be giving an opinion based on the x-rays.

In affirming the judgment, the court of appeals cited *Woy* and said that in *Woy* the western district extended, "in dicta," the continuing duty of Rule 56.01(e)(1)(B) to deposition questions and answers. The court said it was unnecessary to address the propriety of extending the continuing duty of supplementing answers to deposition questions.

The court said that defense counsel showed Dr. Post the x-rays for the first time at trial just before he testified, and the defendant could not have informed plaintiff of any change in Dr. Post's opinion or of a change of the basis for that opinion until Dr. Post had seen the x-ray and formed an opinion. At 273 the court said:

"Arguably the duty to supplement would be triggered when defense counsel decided to elicit [Dr. Post's opinions]. [Citing *Woy* 785 S.W.2d at 604]. However, this would still require a showing that defense counsel did, in fact, consult or interview his medical experts about the x-rays after their deposition testimony. Otherwise, defense counsel would be required to inform plaintiffs' counsel of the questions he might ask, not of actual changes in the experts' opinions or in the changes of the basis for their opinions. This duty would be inconsistent with the duty to supplement interrogatory answers, which does not obligate a party to supplement an answer with speculative information.

"More important, perhaps, in *Woy*, the trial court offered plaintiff's counsel the opportunity to interrogate defendant's expert during trial. Counsel rejected the offer. On appeal, the Court recognized that exclusion of evidence was not the only option of the trial court. Therefore, the Court held that the offer of an opportunity to interview defendant's expert, before he testified about nondisclosed facts, was a proper exercise of the trial courts' discretion. *Id.* at 604.

"Here, plaintiffs made no express request for specific relief, and, therefore, their objection to the testimony of [Dr. Post] about Dr. Brems' x-rays carried with it the single implied request that this testimony be excluded. Faced with that single request, the trial court did not abuse its discretion in rejecting it."

In *Matthews v. City of Farmington*, 828 S.W.2d 693 (Mo.App.1992), the court said that *Woy* extended the continuing duty [to supplement interrogatory answers] to deposition questions and answers and that *Woy* apparently limits the duty to changes, in the expert's opinion or in the basis for his opinion, made before trial. The court added: "Here, the change occurred during trial. *Thus, even if we were to follow Woy, it is not applicable.*" (Emphasis added.)

In *Cremer v. Missouri Pacific R. Co.*, 811 S.W.2d 23 (Mo.App.1991), the court affirmed the ruling of the trial court which had permitted plaintiff to introduce expert testimony, apparently not contained in his deposition, where defendant was permitted to "voir dire" the expert outside the presence of the jury and prior to his trial testimony.

On this record it is unnecessary for this court to decide whether it agrees with the sweeping language of *Woy*. Even if, arguendo, there is a duty to supplement the deposition testimony of an expert to the extent required by *Woy*, no such duty was breached here. The trial court abused its discretion in excluding Exhibit 48 and the testimony of Dr. Watts with respect to that exhibit.

The following factors, on this record, lead to that conclusion:

(1) At Dr. Watts' deposition he was asked no question about Exhibit 48, although either side, prior to that deposition, had access to Exhibit 48. At oral argument defense counsel conceded that he had adequate medical authorization to obtain Exhibit 48 prior to the taking of the deposition.

(2) Exhibit 48 did not change "the general nature of the subject matter" on which Dr. Watts testified. See Rule 56.01(e)(1)(B); Rule 56.01(b)(4)(a).

(3) Exhibit 48 did not change the opinion of Dr. Watts, but it reinforced his opinion which materially differed from defendant's opinion.

(4) Exhibit 48 was shown to defense counsel, and a copy of Exhibit 48 was delivered to defense counsel, several days before the trial.

(5) At the trial, defense counsel had the opportunity to discuss Exhibit 48 with Dr. Watts prior to the giving of his testimony concerning it but declined the opportunity.

(6) Defendant, himself a physician, and Dr. McMillin, a radiologist, examined Exhibit 48 before trial at the instance of defense counsel.

(7) Defendant introduced Exhibit 48, and Exhibit B associated with it, and introduced expert testimony concerning those exhibits.

(8) If Dr. Watts had been permitted to testify concerning Exhibit 48, that testimony, so defendant states, would have had a "drastic effect."

It is unnecessary to consider whether the absence of one or more of the foregoing factors might produce a different result on this appeal. It is sufficient to hold, as this court does, that the presence of all of those factors requires reversal and remand. Other matters raised by plaintiff do not require discussion, for they may not arise on retrial.

The judgment is reversed and the cause remanded.

PREWITT and CROW, JJ., concur.

