**Kathy HATFIELD, Shirley Hatfield, The Estate of Howard Hatfield, and Gregg Hatfield, Appellants,**

v.

**Shawn GRIFFIN and Heartland Regional Medical Center, Respondents.**

**No. WD 62749.**

Missouri Court of Appeals,
Western District.

Oct. 26, 2004.

Roger Wright, Lee's Summit, for Appellant.

Lloyd Bandy, Jr., Kansas City, for Respondent.

PAUL M. SPINDEN, Judge.

Kathy Hatfield, Shirley Hatfield, Gregg Hatfield, and the Estate of Howard Hatfield appeal the circuit court's judgment in this wrongful death action in which the jury returned a verdict for the defendants, Shawn Griffin and Heartland Regional Medical Center. The Hatfields allege that the circuit court erred in not granting a new trial because they established that one of the jurors did not disclose during *voir dire* that she had been sued a week before the trial for unpaid medical bills. The Hatfields' attorney had asked the venire panel to disclose any lawsuits, except those involving domestic relations, in which they had been a party.

In rejecting the Hatfields' motion for a new trial, the circuit court ruled that the juror did not understand that the action against her was a lawsuit and, therefore, she did not intentionally fail to disclose the information. Because a reasonable venire person would have known that she was being asked to disclose her involvement in any kind of lawsuit, including a collection suit, and because the juror, in fact, remembered the action against her, we reverse the circuit court's judgment to deny the Hatfields' motion for new trial and remand the case for retrial.

During *voir dire*, Roger P. Wright, attorney for the Hatfields, asked the venire panel:

Is there anyone here who has either personally or through a member of your immediate family, which I would again[—]mother, father, sister, brother, kids[—]been a party to a lawsuit involving claims of either personal injury or death?

... I don't see any responses.

Let me flip it around. Anyone here who has had a lawsuit brought against you or an immediate family member or friend in which someone was saying that

you were responsible for an injury or death?

Two panel members responded. One reported being sued in connection with a traffic accident, and another reported being sued for an apparent assault. Wright continued *voir dire* by asking, "Was there anyone else who had been a defendant in a lawsuit?" No one responded. He then asked:

... And when originally I asked a defendant in a lawsuit just involving personal injury or death, I'd like to broaden it to some of you who are in businesses. Anybody who's been a defendant in a lawsuit even if it was a[—]a business suit and a suit involving more business or, or some kind of economic claim or anything of that nature? Anyone else who's been involved as a defendant in a lawsuit[? W]e expand it to include your business and[—]and claims arising out of the business[—]disputes over bills and things like that?

THE COURT: Does that question include on either side of such lawsuits?

MR. WRIGHT: Yeah. I actually originally asked it as defendant, but the Court's—yeah, I would broaden that. Planned to do it one piece at a time, but let's[—]let's just open it all the way up. Anybody been in a lawsuit, period, that you haven't already told us about, whether it's personal injury, death or anything else?

Two members of the venire panel disclosed that they had been involved in workers' compensation claims. After questioning them, Wright continued *voir dire:*

Anyone else who's been a party to a lawsuit, either yourself or through your company, that you haven't already told us about?

THE COURT: Are you excluding domestic?

MR. WRIGHT: Yes. And thank you, Judge. That was—I don't want to know if you've been divorced, if there have been suits for orders of protection for[—]for domestic suits. If you've had child custody battles, I[—]I did not mean to include those. I mean a civil lawsuit where somebody is suing somebody else for money, and it's not involving a[—]a divorce, child custody, something like that.

No one responded to the question.

Lisa Donaldson, a member of the venire panel who served as a juror, did not respond to any of these questions although a week before the trial, an officer had served her with the following document:

IN THE CIRCUIT COURT OF BUCHANAN COUNTY, MISSOURI ASSOCIATE DIVISION

MIDWESTERN HEALTH MANAGEMENT, INC., d/b/a NORTHWESTERN FINANCIAL SERVICES, Assignee of PHYSICIANS' ACUTE CARE SERVICES, INC and ST JOSEPH CHIROPRACTIC

Plaintiff,

vs.

LISA M DONALDSON

Defendant.

[SERVE AT PLACE OF EMPLOYMENT: ...

Case No. 02CV77459 [1]

1. These numbers were handwritten.

**118**

Division No. 5[2]
*PETITION ON OPEN ACCOUNT*

*COUNT I*

Plaintiff, for its cause of action in Count I against Defendant, states:

1. Plaintiff is a corporation authorized to do business in the State of Missouri, and is, pursuant to RSMo. § 425.300, the Assignee of certain unpaid accounts of Physicians' Acute Care Services, Inc and St Joseph Chiropractic and Defendant, Lisa M Donaldson, resides in the County of Buchanan, State of Missouri.

2. At the request of Defendant, Physicians' Acute Care Services, Inc provided medical services and supplies to: Jason Valentine.

3. At all times relevant herein Lisa M Donaldson is the parent of Jason Valentine, services and supplies rendered to the child were necessary for the child's health and well-being.

4. That said sums were to be paid on demand; the items of which, the dates when services and supplies were rendered and the prices charged therefore appear on the attached statement, Exhibit A, and incorporated herein.

5. That the prices charged for said services and supplies are and were reasonable and proper and Defendant agreed to pay same.

6. That Plaintiff has made demand for payment and Defendant failed to pay; after all credits and set offs the balance due and owing is $307.00, plus interest to November 26, 2002, in the amount of $34.23.

Wherefore, Plaintiff prays judgment against Defendant in the sum of $307.00, plus interest to November 26, 2002, in the amount of $34.23, with interest thereafter at the maximum legal rate, and court costs.

*COUNT II*

Plaintiff, for its cause of action in Count II against Defendant, states:

1. That the Plaintiff incorporates herein by reference the allegations contained in paragraphs "1" through "5" of Count I of this Petition into this Count II as though fully set forth herein.

2. At the request of Defendant, St. Joseph Chiropractic provided medical services and supplies to: Lisa M Donaldson

3. That said sums were to be paid on demand; the items of which, the dates when services and supplies were rendered and the prices charged therefore appear on the attached statements, Exhibit A, and incorporated herein.

4. That the prices charged for said services and supplies are and were reasonable and proper and Defendant agreed to pay same.

5. That Plaintiff has made demand for payment and Defendant failed to pay: after all credits and set offs the balance due and owing is $678.00, plus interest to November 26, 2002, in the amount of $89.95.

Wherefore, Plaintiff prays judgment against Defendant in the sum of $678.00, plus interest to November 26, 2002, in the amount of $89.95, with interest thereafter at the maximum legal rate, and court costs.

DAVID R. SCHMITT, P.C.
/s/
David R. Schmitt—Bar No. 36535

---

**2.** This number was handwritten

Suite 500, German American Building
106 South 7th Street
Saint Joseph, Missouri 64501
Telephone (816) 233–0303
Facsimile (816) 233–9121
ATTORNEY FOR PLAINTIFF

The circuit court held a post-trial hearing to consider the Hatfields' complaint that they should receive a new trial because of Donaldson's misconduct in not disclosing the lawsuit against her. Donaldson testified that she remembered during *voir dire* that she had been served with the petition and that she had to go to court to pay medical bills, but she did not know that this was a lawsuit. She believed, she said, that the petition and summons meant that she "needed to show up to take care of [her] bill," but it "never occurred to [her] that it was a lawsuit." She said that she did not understand that she was being asked to disclose collection matters or disputes over unpaid bills and that she was not "attempting to hide or conceal ... the fact that [she] had been named as a defendant" or was too embarrassed or humiliated to answer.

The circuit court ruled that Donaldson was credible, honest, and sincere and that her explanation for not revealing the collection suit was reasonable. She was "unfamiliar with legal proceedings and terminology," the circuit court concluded, and given the context of the *voir dire* questions, she reasonably failed to understand the question. The circuit court found that Donaldson's nondisclosure was unintentional and, because the collection suit had no bearing on the case, the Hatfields were not prejudiced.

■ We are obligated to give the circuit court's findings on intent great weight. *See Brines v. Cibis,* 882 S.W.2d 138, 139 (Mo. banc 1994). "A trial court's acceptance or rejection of the juror's explanation is not lightly overturned on appeal."

*Anglim v. Missouri Pacific Railroad Company,* 832 S.W.2d 298, 306 (Mo. banc 1992). We will overturn the circuit court's decision concerning the juror's intent only when it abuses its discretion. The circuit court abuses its discretion when its "ruling is clearly against the logic of the circumstances ... and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Wingate v. Lester E. Cox Medical Center,* 853 S.W.2d 912, 917 (Mo. banc 1993).

■ We do not discern error by the circuit court in its believing Donaldson's explanation for why she did not disclose Midwestern Health Management's lawsuit against her and in concluding that, subjectively, she had not failed to disclose the lawsuit intentionally. The issue, however, was not whether or not Donaldson subjectively intended not to disclose, but whether or not a reasonable person would have understood that she was being asked to disclose the lawsuit.

■ The Supreme Court enunciated this standard in *Williams v. Barnes Hospital,* 736 S.W.2d 33, 36 (Mo. banc 1987). There, the Supreme Court set forth a two-prong test for determining whether or not a venire person had not disclosed information during *voir dire* intentionally: "Intentional nondisclosure occurs: (1) where there exists no reasonable inability to comprehend the information solicited by the question asked of the prospective juror, and (2) where it develops that the prospective juror actually remembers the experience or that it was of such significance that his purported forgetfulness is unreasonable." In other words, under the first prong, we ask whether or not a reasonable person would have understood what information was being elicited. If so, under the second prong, the nondisclosure is intentional if

the venire person either remembers the lawsuit or his or her forgetting it is unreasonable. The Supreme Court reaffirmed this test in *Brines v. Cibis*, 882 S.W.2d 138 (banc 1994), and in *Heinen v. Healthline Management, Inc.*, 982 S.W.2d 244 (banc 1998).

Hence, the circuit court erred in focusing on whether or not Donaldson subjectively understood that she had been named a defendant in a lawsuit. The circuit court should have determined whether or not a reasonable person standing in Donaldson's shoes would have understood that she had been sued. We are confident that a reasonable person would have understood that she had been sued.

■ The document that Donaldson received only the week before indicated that it had been filed "in the circuit court of Buchanan County." Its caption listed a "plaintiff," and it named her as a "defendant." The document declared that the plaintiff was praying for a judgment against her, and an attorney who identified himself as the "attorney for plaintiff" signed it. An officer served the document on her along with a summons ordering her to appear in court. The lawsuit petition was markedly different than all of the bills that Donaldson had received from Physicians' Acute Care Services and from St. Joseph Chiropractic. No reasonable person would have mistaken the petition as merely another bill.

Focusing on the second prong of the *Williams* test, Donaldson said that Midwestern Health Management's lawsuit "did not enter her mind"—a species of forgetfulness—because she did not realize that it was a lawsuit. Having already established that her not realizing it was a lawsuit was unreasonable, her failing to recall it, especially in light of its recency, was also unreasonable.

■ Hence, under the *Williams* test, the circuit court should have ruled that Donaldson's failure to disclose was intentional. The circuit court, therefore, should have granted the Hatfields' motion for a new trial because it should have presumed bias and prejudice from Donaldson's intentional nondisclosure. *Williams*, 736 S.W.2d at 38; *Brines*, 882 S.W.2d at 140. The Supreme Court has instructed that "a finding of intentional concealment has 'become tantamount to a per se rule mandating a new trial.... Only where a juror's intentional nondisclosure does not involve a material issue, or where the nondisclosure is *unintentional,* should the trial court inquire into prejudice." *Brines*, 882 S.W.2d at 140 (emphasis in original) (citation omitted). The Supreme Court went on to declare in *Brines* that "questions and answers pertaining to a prospective juror's prior litigation experience are material." *Id.*

Thus, because the circuit court should have deemed Donaldson to have failed to disclose her being sued by Midwestern Health Management intentionally, it should have ruled that her misconduct was prejudicial as a matter of presumption. The circuit court, therefore, erred in denying the Hatfields' motion for a new trial.

For this reason, we reverse the circuit court's judgment. We remand with instructions that it grant the Hatfields' motion for a new trial.

EDWIN H. SMITH, Chief Judge, and ROBERT G. ULRICH, Judge, concur.