Sam **BRADFORD** and Mollie Bradford, Plaintiffs/Respondents,

v.

**BJC CORPORATE HEALTH SERVICES, d/b/a BarnesCare, a corporation, Defendant/Appellant.**

No. ED 86339.

Missouri Court of Appeals, Eastern District, Division One.

June 27, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 17, 2006.

Application for Transfer Denied Sept. 26, 2006.

Philip L. Willman, St. Louis, MO, for appellant.

Stephen R. Woodley, St. Louis, MO, for respondent.

CLIFFORD H. AHRENS, Judge.

BJC Corporate Health Services, d/b/a BarnesCare ("BarnesCare") appeals the judgment of the trial court on a jury verdict in favor of Sam Bradford ("plaintiff") on his claims of medical negligence. BarnesCare argues that the trial court improperly denied its motion to dismiss for lack of subject matter jurisdiction. BarnesCare also alleges that the court submitted an improper verdict directing instruction to the jury and erroneously excluded expert testimony. Finally, BarnesCare claims that the trial court erred in denying its motion for new trial because of intentional juror nondisclosure during voir dire.

BarnesCare operates a clinic at Boeing. Plaintiff was an employee at Boeing, and he fell while at work and suffered an injury to his right thigh. Plaintiff visited the clinic for treatment of the injury. Initially, plaintiff was seen by Dr. Lee B. Heutel, M.D. and Dr. Ashokkumar Patel, M.D. After seeing both physicians, plaintiff was diagnosed with a contusion, or bruised thigh, and told to treat the injury with warm soaks and ibuprofen. Plaintiff was allowed to return to work with no restrictions. Plaintiff continued to see Dr. Heutel at the clinic through March, April, and May of 1999. Plaintiff underwent physical therapy, and in May 1999, plaintiff developed a lump in his thigh that prompted Dr. Heutel to refer plaintiff to an orthopedist. The orthopedist diagnosed a tear of the tendon in plaintiff's thigh.

Plaintiff and his wife, Mollie Bradford, ultimately filed a suit against BarnesCare alleging medical negligence, loss of chance, and loss of consortium[1], based upon the alleged negligence of Dr. Patel and Dr. Heutel. BarnesCare filed a motion to dismiss alleging lack of subject matter jurisdiction, arguing that the Missouri workers' compensation law provided the exclusive remedy for plaintiff because BarnesCare

---

1. Mollie Bradford's claims against Barnes-Care were dismissed prior to submission of those claims to the jury.

was an agent of Boeing, plaintiff's employer. The trial court denied BarnesCare's motion, and the cause proceeded to trial. The jury returned a verdict in favor of plaintiff, and the court entered its judgment in favor of plaintiff in the amount of $250,000.00. BarnesCare filed a motion for judgment notwithstanding the verdict and an alternative motion for new trial. In its motion for new trial, BarnesCare alleged juror nondisclosure, in addition to several other claims. An evidentiary hearing was held on BarnesCare's motion, at which Juror Jeanette Allen testified regarding her alleged nondisclosure. The trial court subsequently denied Barnes-Care's post-trial motions, and the present appeal followed.

■ In its first point on appeal, Barnes-Care argues that the trial court erred in denying its motion to dismiss for lack of subject matter jurisdiction. BarnesCare claims that because BarnesCare was an agent of Boeing, the exclusivity provision of Missouri worker's compensation law applies to preclude plaintiff's claims.

■ A motion to dismiss for lack of subject matter jurisdiction is the appropriate avenue through which to pursue a defense of the exclusivity of the workers' compensation law. *Nowlin ex rel. Carter v. Nichols*, 163 S.W.3d 575, 577 (Mo.App. 2005) (citation omitted). Where it appears that the court lacks jurisdiction, the court shall dismiss the action. *Quinn v. Clayton Const. Co., Inc.*, 111 S.W.3d 428, 431 (Mo. App.2003); (citing *James v. Poppa*, 85 S.W.3d 8, 9 (Mo. banc 2002)). It must appear by a preponderance of the evidence that the court lacks jurisdiction. *Id.* "Whether there is subject matter jurisdiction is a question of fact that is left to the sound discretion of the trial court." *Id.* Thus, we review for abuse of discretion. *Id.* at 431–32 (citation omitted).

In *James v. Poppa*, 85 S.W.3d 8 (Mo. banc 2002), the Missouri Supreme Court considered an issue similar to that in the present appeal.

In *James*, the court was faced with the issue of whether the trial court correctly decided it lacked jurisdiction over the plaintiff's medical malpractice claim against a treating physician because such claim was governed exclusively by workers' compensation law. The court considered the claim in the context of section 281.120, which governs whether an injury falls under the workers' compensation law, and section 287.150, which allows common law actions against third party tortfeasors. 85 S.W.3d at 10. The court concluded that a third party was one with whom there was no master-servant relationship under workers' compensation law. *Id.*; (citing *Schumacher v. Leslie*, 360 Mo. 1238, 232 S.W.2d 913, 918 (1950)). The court found that because the petition did not allege that the physician was an agent of the plaintiff's employer, and no evidence existed in the record to support such a finding, the physician was a third party under section 287.150, and therefore, was not immune from a civil suit. *Id.* The court found the trial court's ruling that it lacked jurisdiction was erroneous and reversed and remanded the cause. *Id.*

As in *James*, in the present case the petition does not allege any agency or master-servant relationship between Dr. Heutel and Dr. Patel and Boeing, plaintiff's employer. Instead, the petition alleges only that the physicians who treated plaintiff were agents, employees, and servants of BarnesCare. Moreover, there is no evidence in the record before us to establish an agency or master-servant relationship between the physicians and plaintiff's employer, Boeing. Although BarnesCare did operate a clinic at Boeing, both Dr. Patel and Dr. Heutel were em-

ployed by BarnesCare, not Boeing. There was evidence that Dr. Heutel had entered into an employment agreement with BarnesCare, and both physicians testified that their employer was BarnesCare. Neither physician worked solely at the Boeing clinic, but instead, both physicians worked at other facilities as well. Dr. Patel testified that his salary was paid by BarnesCare. Additionally, in its answer to one of plaintiff's interrogatories, Barnes-Care stated that Dr. Patel and Dr. Heutel were the employees, agents, and servants of BarnesCare.

BarnesCare attempts to argue that *Burns v. Employer Health Services, Inc.*, 976 S.W.2d 639 (Mo.App.1998) applies to the present case. In *Burns*, a plaintiff filed a medical malpractice claim against a case management company and its employees based upon treatment received after she was injured at work[2]. Burns had fallen at her place of employment, and she alleged that the case management company which monitored and directed her medical treatment for her employer failed to refer her to an orthopedic surgeon. The cause was dismissed for lack of subject matter jurisdiction because the court determined that exclusive jurisdiction was vested in the workers' compensation law. The court of appeals affirmed the dismissal, finding that the plaintiff had challenged only the type of medical care provided, and she did not allege "something extra," to place the negligence outside the general duty of the employer to provide the plaintiff with reasonable and proper medical treatment and to subject them to civil liability. *Id.* at 645.

However, the court in *James* distinguished *Burns* on the grounds that the petition in *Burns* contained allegations that the employer and its agents or employees were negligent. *James*, 85 S.W.3d at 10, n. 2. In *Burns*, the defendant was a case management company, monitoring and directing medical treatment as an agent of the employer. The court in *James* concluded that the analysis in *Burns* was focused on that agency and the agent's carrying out the duty of the employer to provide reasonable and proper medical treatment for an employee's work-related injury. *Id.* In the present case, Dr. Heutel and Dr. Patel could not be considered to be agents carrying out the general duty of plaintiff's employer to provide reasonable medical treatment for plaintiff's work-related injury absent some evidence of agency or master-servant relationship. As the court concluded in *James*, the analysis in *Burns* is not "on point here," because no evidence or allegation of such agency exists in the record before us. *Id.*

The evidence indicates that Dr. Heutel and Dr. Patel were employees of Barnes-Care. No evidence was presented to establish any agency relationship between the physicians and Boeing. Therefore, BarnesCare was not immune under the workers' compensation law from civil suit. As a result, the trial court's decision to deny the motion to dismiss was not erroneous. Point denied.

■ In its second point on appeal, BarnesCare argues that the trial court erred in giving Instruction 6, the verdict directing instruction, to the jury.

■ Whether the jury was properly instructed is a question of law, which we review *de novo*. *Ostrander v. O'Banion*, 152 S.W.3d 333, 335 (Mo.App.2004); (citations omitted). Although our review is *de*

---

**2.** The plaintiff also filed suit against other medical professionals, but the issue on appeal concerned only the dismissal of the case management company and its employee, which was deemed final for purposes of appeal by the trial court.

*novo,* we do view the evidence in the light most favorable to the submission of the instruction and we disregard evidence and inferences to the contrary. *Id.;* (citing *Wright v. Barr,* 62 S.W.3d 509, 526 (Mo. App.2001)).

Instruction 6 stated:

Your verdict must be for the plaintiff, Sam Bradford if you believe:

First, defendant BarnesCare either:

failed to diagnose and treat a rectus femorus tear by March 26, 1999, or failed to refer plaintiff Sam Bradford to an orthopedist by March 26, 1999, or,

failed to order rest and immobilization on March 19, 1999, or

failed to order rest and immobilization on March 26, 1999, and

Second, defendant BarnesCare in any one or more of the respects submitted in paragraph First, was thereby negligent, and

Third, such negligence directly caused or directly contributed to cause damage to plaintiff Sam Bradford.

A verdict directing instruction is designed to hypothesize propositions of fact for the jury to accept or reject. *Ostrander,* 152 S.W.3d at 336; (citing *Lasky v. Union Elec. Co.,* 936 S.W.2d 797, 800 (Mo. banc 1997)). The instruction must hypothesize to the jury all facts necessary to sustain the verdict, and the instruction must not assume disputed facts. *Id.* (citations omitted).

In the present case, BarnesCare claims that the instruction improperly assumed the disputed issue of whether plaintiff had a distal rectus femorus tear on March 26, 1999. However, as plaintiff notes, the use of the phrase, "failed to diagnose and treat a rectus femorus tear by March 26, 1999," does not assume such an injury. Using the phrase, "a rectus femorus tear," rather than using the phrase, "the rectus femorus tear," does not result in the assumption that the injury occurred. Instead, in order to determine that BarnesCare failed to diagnose and treat "a" rectus femorus tear, the jury would have to first conclude that such an injury did, in fact, occur.

BarnesCare argues that the Missouri Supreme Court disagreed with a similar argument in *Harvey v. Washington,* 95 S.W.3d 93 (Mo. banc 2003). In *Harvey,* a plaintiff filed a wrongful death and medical malpractice action as a result of the death of his wife. The verdict directors submitted at trial referred to "[wife's] pseudomonas urinary tract infection." A verdict was returned in favor of the plaintiff, and the physicians appealed, claiming the verdict directing instructions improperly assumed the disputed fact that the wife had a pseudomonas urinary tract infection. Before returning with their verdict, the jury submitted a question to the court asking if the instructions meant that the court was stating the wife had the pseudomonas infection or if that was for the jury to decide. The court reversed the judgment, finding that the verdict directors assumed a disputed fact and confused the jury. *Id.* at 98.

The present case is distinguishable from *Harvey.* In *Harvey,* the verdict directors did not use the term "a," but instead referred to "[wife's]" infection. Moreover, the jury submitted a question indicating their confusion from the wording of the instruction. The jury specifically asked if the issue in dispute was assumed by the instruction or if it was one for their decision. No such question was submitted in the present case.

Instruction 6 did not assume the disputed fact regarding plaintiff's injury, but instead left the issue to the jury to determine. Thus, the trial court did not err in

submitting the verdict directing instruction to the jury in this case. Point denied.

■ In its third point, BarnesCare claims the trial court erred in excluding the testimony of its expert, Dr. George Luther, M.D.

■ The admissibility of expert testimony is within the trial court's discretion. *Eagan v. Duello,* 173 S.W.3d 341, 346 (Mo. App.2005); (citing *Blake v. Irwin,* 913 S.W.2d 923, 931 (Mo.App.1996)). An abuse of discretion occurs only when the decision of the trial court is so clearly against the logic of the circumstances that it shocks the sense of justice and indicates lack of careful consideration. *Id.* (citation omitted).

■ When an expert witness changes his opinion after deposition, but prior to trial, the new information must be disclosed to the opposing party. *Eagan,* 173 S.W.3d at 346; (citing *Green v. Fleishman,* 882 S.W.2d 219, 221 (Mo.App.1994)). "The stated policy behind this notion is to prevent experts from changing their opinions without notice to the opposition prior to trial, thus frustrating the purpose of the discovery rules and resulting in concealment and unfair surprise." *Id.* (citation omitted). When evidence is presented during trial that has not been previously disclosed, the court has broad discretion, and it is within that discretion to reject such evidence. *Id.;* (citing *Green,* 882 S.W.2d at 222).

Here, BarnesCare's expert, Dr. George Luther, M.D., was expected to testify at trial. Dr. Luther had previously been deposed and provided his opinions regarding plaintiff's injury and treatment. The day before he was to testify at trial, Dr. Luther reviewed an MRI film with a radiologist. Prior to his deposition, Dr. Luther had reviewed the MRI report, but he did not review the actual MRI film until the day before his expected testimony at trial. He testified at his deposition that he did not need to review the film to form his opinion. At trial, outside the hearing of the jury, the court permitted a voir dire examination of Dr. Luther to discern what, if any, effect his review of the MRI film had on his previously stated opinions. At his deposition, Dr. Luther testified that he believed plaintiff suffered a tear in his tendon. After reviewing the MRI film, Dr. Luther stated that this opinion changed, and he believed the tear occurred in the mid-thigh muscle.

While Dr. Luther stated that this revised opinion did not change his opinions regarding the standard of care and the appropriate treatment of plaintiff, the trial court noted that the MRI film was available to Dr. Luther prior to trial, and Dr. Luther said at his deposition that he had not reviewed the film, but he did not need to review the film to form his opinion. As a result, the court determined that Dr. Luther's testimony with respect to the review of the MRI film would be stricken, and BarnesCare did not call Dr. Luther at trial.

While Dr. Luther's opinions did not change with respect to the standard of care, they did change with respect to the location of plaintiff's injury, which was a significant issue at trial. Plaintiff's orthopedic surgery experts, Dr. Ronald Kendrick, M.D., and Dr. Edwin Carter, M.D., both testified that Dr. Patel and Dr. Heutel failed to make the appropriate diagnosis and prescribe the appropriate treatment. The location of the injury was a significant factor in the opinions of Dr. Kendrick and Dr. Carter. According to Dr. Kendrick, the treatment prescribed to plaintiff was inappropriate because the injury was to the rectus femoris tendon, rather than the muscle. Dr. Carter also stated that he agreed the injury was to the

distal rectus femorus, and even if the tear was in the muscle, Dr. Patel and Dr. Heutel treated such an injury improperly.

Originally, in his deposition, Dr. Luther's testimony regarding the nature of plaintiff's injury was consistent with that of plaintiff's experts. After reviewing the MRI film the day before he was to testify at trial, however, Dr. Luther's opinion as to the location of the injury changed. Because the location of the injury was clearly in dispute at trial and was the focus of plaintiff's experts' opinions as to standard of care, allowing Dr. Luther to testify regarding his opinion as to the location of the injury would have resulted in unfair surprise to plaintiff.

Additionally, even without Dr. Luther's testimony with respect to the location of plaintiff's injury, BarnesCare was still able to present testimony regarding the location and nature of plaintiff's injury through its expert, Dr. William Ricci, M.D. Dr. Ricci stated that plaintiff suffered a muscle tear and there was no indication of a full tear with tendon involvement.

BarnesCare relies upon *Darnaby v. Sundstrom*, 875 S.W.2d 195 (Mo.App. 1994), as support for its argument that because the "general nature of the subject matter" of Dr. Luther's testimony did not change, the trial court should not have excluded it. However, *Darnaby* is distinguishable from the present case. In *Darnaby*, the expert witness had been previously deposed, but he did not discuss a particular x-ray, and he did not even know it existed. At trial, the plaintiff attempted to introduce the x-ray and elicit testimony from his expert regarding it. The court excluded testimony from the expert at trial regarding the x-ray. The court of appeals reversed the decision of the trial court. *Id.* at 203.

Although as in *Darnaby*, Dr. Luther stated that the review of the MRI film did not change his opinions as to the standard of care, and the MRI film was available to plaintiff and his experts, the present case is distinguishable. Unlike *Darnaby*, here Dr. Luther did testify at his deposition regarding the MRI, and he did have access to the film and knowledge of its existence prior to his deposition, and well in advance of trial. While there was an opportunity to voir dire Dr. Luther at trial, we cannot discern from the record whether there was any additional opportunity to discuss the review of the MRI film, and the subsequent change of opinion as to the location of the injury with Dr. Luther or the other experts. Therefore, we cannot conclude that the trial court abused its discretion in excluding the testimony of Dr. Luther with respect to the MRI film. Point denied.

 In its fourth and final point on appeal, BarnesCare claims the trial court erred in denying its motion for new trial because BarnesCare suffered prejudice from intentional juror nondisclosure. BarnesCare argues that juror Jeanette Allen intentionally failed to disclose her involvement in prior litigation, and as a result of this intentional nondisclosure, BarnesCare was prejudiced.

During voir dire, counsel for Barnes-Care asked the panel of potential jurors, "[h]as anyone else, anyone here ever been sued by a doctor or a hospital for whatever reason that might be? Say for collection or something like that?" No one responded to this question. BarnesCare later discovered that a juror in the case, Jeanette Allen, was a defendant in an action filed by her dentist for collection. Allen failed to disclose this suit when asked the question during voir dire. In its order denying BarnesCare's motion for new trial, the court concluded that the question asked by counsel was clear; however, Allen's failure to remember the claim was not unreason-

able. The court concluded that the nondisclosure was unintentional, and the claim was not material to the present case.

We review the trial court's ruling with respect to juror misconduct for abuse of discretion. *Grab ex rel. Grab v. Dillon,* 103 S.W.3d 228, 240 (Mo.App.2003) (citation omitted).

"Parties to a lawsuit have a constitutional right to a fair and impartial jury." *Grab ex rel. Grab,* 103 S.W.3d at 240; (citing *Keltner v. K–Mart Corp.,* 42 S.W.3d 716, 721 (Mo.App.2001)). Voir dire is designed to ensure the selection of such a fair and impartial jury by allowing counsel to ask questions which permit counsel to learn facts which may form the basis of challenges for cause and which may be useful in executing peremptory challenges. *Id.* (citations omitted). Voir dire affords counsel the opportunity to discover potential biases of the members of the panel relevant to the type of suit being tried. *Id.* The venirepersons have a duty to answer the questions fully, fairly, and truthfully. *Id.*

Juror nondisclosure will only be found after a clear question unequivocally triggers a duty to answer. *Grab ex rel. Grab,* 103 S.W.3d at 241; (citing *Moore ex rel. Moore v. Bi–State Dev. Agency,* 87 S.W.3d 279, 288 (Mo.App.2002)). Here, the question posed by counsel for Barnes-Care was clear; therefore, we must next determine whether the nondisclosure was intentional or unintentional. *Id.* at 243 (citing *Keltner,* 42 S.W.3d at 723).

Intentional nondisclosure occurs if the juror is reasonably able to comprehend the information solicited by the question asked by counsel, and where the potential juror actually remembers the experience or it is unreasonable for the potential juror to have forgotten it. *Grab ex rel. Grab,* 103 S.W.3d at 243. If a court

finds intentional nondisclosure, it effectively *per se* requires a new trial. *Id.*

The trial court found that Allen's nondisclosure was not intentional. At a post-trial hearing on the issue, Allen testified that while she did agree to the judgment against her for collection, she did not remember the suit at the time of the voir dire examination for the present case. The trial court acknowledged that it may seem "incredible" that a person would not remember being sued nearly five years earlier; however, the court believed Allen's assertion that she did not remember the suit at the time of voir dire. The court determined that Allen's "affect" at the post-trial hearing was "believable," and this finding should be given great weight. *Grab ex rel. Grab,* 103 S.W.3d at 241 (citations omitted) (the findings of the court with respect to a motion for new trial on grounds of juror misconduct should be given great weight). The court also noted that Allen characterized the prior suit as one arising from an insurance dispute, and did not concern dissatisfaction with her dentist or the care he provided.

Considering the fact that the suit occurred almost five years prior, coupled with the evidence that Allen did not recall the suit at the time of voir dire and Allen's characterization of the action as arising from an insurance dispute, we do not believe the court abused its discretion in its conclusion that Allen's nondisclosure was unintentional.

"If the trial court finds the nondisclosure was unintentional, a new trial is not warranted unless the party seeking it proves prejudice that may have influenced the verdict." *Grab ex rel. Grab,* 103 S.W.3d at 243; (citing *Moore,* 87 S.W.3d at 291). If the information withheld has no bearing on the present case, or on the ability of the potential juror to

fairly evaluate the evidence, no prejudice results. *Id.*

Here, Allen stated that if she had remembered the case, she would have answered the question from BarnesCare's counsel during voir dire regarding prior suits. As previously noted, Allen characterized the suit as one arising from a dispute with her insurance company. There was no indication that she was dissatisfied with the care provided to her by the dentist involved in the collection action, and more importantly, Allen testified that her involvement with the collection action would not have any impact on her ability to sit as a juror in plaintiff's case. As a result, no prejudice resulted from the unintentional nondisclosure of Allen.

Although BarnesCare attempts to cite several cases in support of its claim on appeal, each case is distinguishable. BarnesCare cites three cases in particular in which juror nondisclosure rose to the level of requiring a new trial. In *Brines By and Through Harlan v. Cibis*, 882 S.W.2d 138 (Mo. banc 1994), the court found that a juror's nondisclosure in a medical malpractice action of eight different actions filed against him, seven of which were brought by physicians to collect payment for services, was intentional nondisclosure on a material issue, and new trial was warranted. Clearly in the present case we are not faced with a juror's failure to disclose such a significant number of actions against him or her.

BarnesCare also cites *Hatfield v. Griffin*, 147 S.W.3d 115 (Mo.App.2004) in support of its argument. In *Hatfield*, the court found that a juror's nondisclosure of an action filed against her for nonpayment of medical expenses the week before trial was intentional and remanded the cause for new trial. *Id.* at 120. In the present case, the action against Allen was far more remote in time than one week prior to trial. Instead, the suit occurred almost five years prior to the present trial.

Finally, BarnesCare relies upon *Doyle v. Kennedy Heating and Service, Inc.*, 33 S.W.3d 199 (Mo.App.2000), in which the court affirmed the trial court's judgment granting a motion for new trial based upon juror nondisclosure. In *Doyle*, the juror failed to disclose a prior bankruptcy case during voir dire; however, plaintiff conceded on appeal that the juror nondisclosure was intentional. Plaintiff had made no such concession in the present case.

As a result of the foregoing, we do not believe the trial court abused its discretion in denying BarnesCare's motion for new trial based upon alleged juror misconduct. Point denied.

The judgment of the trial court is affirmed.

MARY K. HOFF, P.J., and PATRICIA L. COHEN, J., concur.